695 A.2d 325

ALBERT CASSANELLO, PLAINTIFF–APPELLANT, v. JOHN LUD-DY, DOUGLAS WEITE, TOP SHOTS, INC., TRADING AS HOT SHOTS, JORGE GAMARRA AND LUIS MENDEZ, DEFEN-DANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued February 4, 1997—Decided June 23, 1997.

Before Judges STERN and HUMPHREYS.

*Stephen L. Klein* argued the cause for appellant.

*Alison M. Nissen* and *Michael J. Palma* argued the cause for respondents (*Capehart & Scatchard,* and *Frese & Palma,* attorneys; *F.J. Fernandez–Vina,* of counsel; *Ms. Nissen* and *Mr. Palma,* on separate briefs).

The opinion of the court was delivered by

HUMPHREYS, J.A.D.

Plaintiff was a patron of the defendant Hot Shots tavern ("tavern") in North Bergen, New Jersey. One evening he was attacked by two other patrons after he had left the tavern. His skull was fractured with an axe hammer. Plaintiff's suit against the tavern and the tavern's security person was dismissed on defendants' motion at the end of plaintiff's case. The judge held that the attack was not reasonably foreseeable and therefore that the tavern did not owe the plaintiff a duty of care. We reverse.

I

A motion for dismissal at the close of plaintiff's case must be denied:

> if, accepting as true all the evidence which supports the position of the party defending against the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could differ.... [T]he judicial function here is quite a mechanical one. The trial court is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion.
>
> [*Dolson v. Anastasia,* 55 *N.J.* 2, 5–6, 258 *A.*2d 706 (1969) (citations omitted).]

Viewed from that perspective, the pertinent evidence can be summarized as follows. Plaintiff entered the tavern near midnight on Saturday, December 28, 1991. The defendant Luddy was the only security person on duty, although the tavern usually had

two security persons on weekend evenings. Plaintiff testified that two patrons in the tavern, later identified as the defendants Gamarra and Mendez were "very loud," "very incoherent" and were making a scene in the tavern. They appeared to be intoxicated; nevertheless the bartender continued to serve each of them two bottles of beer and two shots of liquor. The two men continued "their scene making" and were "stumbling" and "incoherent."

They approached plaintiff and struck up a conversation with him. They were "overly excited" and "jumping all over the place." They started to "hug" plaintiff. The two men ordered more drinks for all three of them. Plaintiff refused the drinks they ordered. The two men became annoyed and began to push and shove plaintiff. Luddy then intervened to separate them.

The two men went to the rear of the tavern to play pool. Thereafter, plaintiff saw the bartender serve the two men two more bottles of beer and two more shots of liquor.

A short time later, plaintiff left the premises. He walked across the tavern's parking lot and got into his van which was parked on the street adjacent to the parking lot. He heard loud noises coming from outside the van. When he looked out, he saw the two men "banging, kicking, screaming and going around the van." Plaintiff also saw that Luddy had left the tavern and was coming toward the van.

Plaintiff drove the van into the parking lot of the tavern. The two men "continued kicking and screaming, going around the van." Plaintiff testified that he "told Luddy that things have gone far enough, to call the police." Luddy replied, "You don't want the police called." Plaintiff responded: "Don't tell me what I want. Call the police."

At this point, plaintiff realized that Luddy would not call the police. Plaintiff decided to leave the premises to summon the police himself. He backed his van onto the street in front of the bar and drove away from the premises. He stopped for a red light on the same block as the tavern. He was about sixty feet

from the tavern. While he was waiting at the red light, the two men approached the van with an axe hammer and smashed a window in the van. They grabbed plaintiff through the open window, pulled him halfway out of the van and struck him over the head with the axe hammer. Apparently, the two men had returned to their car to get the axe hammer and then ran to plaintiff's van.

The blow to plaintiff's head fractured his skull and left him momentarily unconscious. When plaintiff regained consciousness, he decided to chase the two men despite his injury and profuse bleeding. Several blocks from the premises, he saw the two men in their car enter another parking lot. He drove into the lot. Both vehicles circled around the parking lot; the two men struck plaintiff's van in the rear with their car. Plaintiff flashed his lights, blew his horn and yelled for someone to call the police. Plaintiff stopped his van at a gas station across from the parking lot and the police arrived. Plaintiff was taken to the hospital and surgery was performed.

The two men were picked up by the police several hours later near the gas station and parking lot. Both were intoxicated. They were in their car, and the axe hammer was in the car. They were charged with "aggravated assault, possession of a weapon, criminal mischief, possession of a weapon for an unlawful use with an additional charge of DWI to [the driver] Mr. Gamarra." The final disposition of these charges is not reflected in the record.

## II

The proprietor of business premises owes a duty to patrons "to provide a reasonably safe place to do that which is within the scope of the invitation." *Butler v. Acme Markets, Inc.,* 89 *N.J.* 270, 275–76, 445 *A.*2d 1141 (1982). The duty is to use "due care under all the circumstances." *Bozza v. Vornado, Inc.,* 42 *N.J.* 355, 359, 200 *A.*2d 777 (1964). The test of negligence is whether a "reasonably prudent person at the time and place should recognize and foresee an unreasonable risk or likelihood of harm or danger to others." *Rappaport v. Nichols,* 31 *N.J.* 188,

201, 156 *A*.2d 1 (1959). An important factor is whether it is foreseeable that the criminal acts of others would cause harm. *See Kuzmicz v. Ivy Hill Park Apartments, Inc.*, 147 *N.J.* 510, 515, 688 *A*.2d 1018 (1997); *McGlynn v. Parking Authority*, 86 *N.J.* 551, 560, 432 *A*.2d 99 (1981). Whether a duty exists is a matter of law that is decided by the court, not the jury. *Wang v. Allstate Ins. Co.*, 125 *N.J.* 2, 15, 592 *A*.2d 527 (1991).

■ Here, the tavern's negligence is apparent. The tavern continued to serve drinks to two unruly intoxicated men, even after its security person was obliged to separate them from the plaintiff. A State agency regulation provides that a tavern licensee shall not "engage in or allow, permit or suffer in or upon the licensed premises ... any brawl, act of violence, disturbance or unnecessary noise." *N.J.A.C.* 13:2–23.6(a)(2). This regulation provides a minimum standard of safety and has the force of law. *See Dubak v. Burdette Tomlin Memorial Hosp.*, 233 *N.J.Super.* 441, 458, 559 *A*.2d 424 (App.Div.) (citing *Trentacost v. Brussel*, 82 *N.J.* 214, 230, 412 *A*.2d 436 (1980)), *certif. denied*, 117 *N.J.* 48, 563 *A*.2d 817 (1989). Viewing the evidence most favorably to the plaintiff, the tavern was clearly negligent and violated its legal duty to maintain its premises in a safe and orderly condition.

The tavern argues that its legal duty to the plaintiff ended once the plaintiff left the tavern. The tavern maintains that its security person was under no legal duty to call the police even after he had seen the two men attack plaintiff in his car in the tavern's parking lot and had heard the plaintiff insist that the police be called. We do not agree with such a restricted view of a tavern owner's liability.

The New Jersey Supreme Court in a recent case, *Kuzmicz v. Ivy Hill Apartments, Inc., supra*, reviewed the duty of a landlord to its tenant for an off-premises criminal attack. The Court said:

In the related context of the duty of landowners for injuries that occur on their premises, the analysis no longer relies exclusively on the status of the injured party. *Instead "[t]he issue is whether, 'in light of the actual relationship between the parties under all of the surrounding circumstances,' the imposition of a duty on the landowner is 'fair and just.'"* For off-premises liability, the issue is substantially the same. In both contexts, however, the analysis is fact-sensitive.

Ultimately, the determination of the existence of a duty is a question of fairness and public policy. *Foreseeability of injury to another is important, but not dispositive. Fairness, not foreseeability alone, is the test.* Relevant to the determination of the fairness of the imposition of a duty on a landowner is the nature of the risk, the relationship of the parties, the opportunity to exercise care, and the effect on the public of the imposition of the duty.

[147 *N.J.* at 515 (citations omitted) (emphasis added).]

Kuzmicz, a tenant, was attacked on a property adjoining the landlord's property. He entered the property through a gap in the landlord's fence. The Court found that there was no economic benefit to the landlord from the tenant's use of the path through the fence and that under those circumstances it would not be fair to impose a duty on the landlord to protect Kuzmicz from a criminal attack occurring on the other property. *Id.* at 521, 688 *A.*2d 1018.

Here, the altercation started in the tavern and continued in the tavern's parking lot. The tavern derives an economic benefit from affording its patrons, like plaintiff, protection from such altercations. Additionally, the State regulation imposes a duty upon the tavern to protect its patrons "in or upon the licensed premises." The fact that the final attack occurred some sixty feet away from the tavern is not dispositive. As stated in *Kuzmicz*, "for off-premises liability, the issue is substantially the same." *Id.* at 515, 688 *A.*2d 1018.

Further, the Court said in *Kuzmicz* that property owners "may be liable if they negligently conduct activities that expose others to foreseeable criminal attacks." *Id.* at 521, 688 *A.*2d 1018. In the case before us, the tavern served and continued to serve unruly and intoxicated patrons. These patrons, to the knowledge of the tavern and its security person, harassed the plaintiff inside the bar and attacked the plaintiff while he was in his car in the tavern's parking lot. Under those circumstances, it is "fair and just" to place upon the tavern owner and its security person a legal duty to take reasonable measures to safeguard the plaintiff when he leaves the premises. *Id.* at 515, 688 *A.*2d 1018.

Summoning the police when requested by a patron who is being attacked under circumstances like these is plainly such a reason-

able measure. In *Dubak, supra,* we said that "under certain circumstances, a tavern owner is duty-bound to summon the police when it is reasonably foreseeable that a patron may otherwise be harmed by the criminal acts of another." 233 *N.J.Super.* at 458–59, 559 *A.2d* 424. In *Dubak,* an altercation occurred in a tavern between the decedent and another patron. When the decedent left the tavern, the other patron attacked the decedent in the tavern's parking lot. The tavern's security person intervened and physically restrained the other patron. The decedent walked to his car in an adjacent parking lot but was again attacked by the other patron. The decedent's friends sought help from the tavern's security personnel who again restrained the other patron. On these facts, we affirmed the jury's verdict that the tavern was liable for its negligence in failing to summon the police. We reasoned that the duty to summon the police "rests upon the foreseeability of the risk of criminal acts by others and the opportunity of the tavern owner to summon the police." *Id.* at 459, 559 *A.2d* 424. A number of decisions in other jurisdictions hold that a duty exists in similar situations. *E.g., Abernethy v. Spartan Food Systems, Inc.,* 103 *N.C.App.* 154, 404 *S.E.2d* 710 (1991); (employee observed altercation on premises' front lawn but did not summon police); *Eastep v. Jack–in–the–Box,* 546 *S.W.2d* 116 (Tex.Ct.Civ.App.1977); (employee observed the exchange of cursing and obscenities in the restaurant but did not demand that the parties leave or summon the police); *Anderson v. Clements,* 284 *So.2d* 341 (La.Ct.App.1973) (employee was warned that a customer was coming back to premises to "cause trouble" but did not summon police).

The trial judge distinguished *Dubak* and the out-of-state cases. The judge said that Luddy's "actions in separating the [combatants] and letting [plaintiff] leave and seeing to it that he had a *head start* [were] reasonable *as a matter of law.*" (emphasis added).

We disagree with the trial judge's holding that the tavern and Luddy's actions were reasonable "as a matter of law." Taverns

are natural hot beds of violence. *See Affiliated Distillers Brands Corp. v. Sills*, 56 *N.J.* 251, 256, 265 *A.*2d 809 (1970) ("[B]ecause of its inherent evils, liquor has always been dealt with as a subject apart."); *Borough of Fanwood v. Rocco*, 33 *N.J.* 404, 411, 165 *A.*2d 183 (1960) (liquor's "inherently far-reaching dangers are evident"); *Canada Dry Ginger Ale, Inc. v. F & A Distrib. Co.*, 28 *N.J.* 444, 454, 147 *A.*2d 15 (1958) ("The inherent social dangers of the liquor industry are evident...."). Here, the two men were obviously bent on harming the plaintiff. After the altercation in the tavern, they proceeded to bang and kick on his van. These violent actions could readily convince a jury that it was reasonably foreseeable that the acts would continue. The jury could infer that Luddy went inside without insuring that the two men remained behind while plaintiff safely left the premises. A jury could reasonably find that giving plaintiff a "head start" was not good enough. The security person should have remained in the parking lot to insure that the other two patrons did not leave until the plaintiff, as the plaintiff's expert testified, "cleared the scene."

Plaintiff's expert testified that there were standard procedures in the security industry which provide that under the circumstances here, Luddy should have called the police when he was requested to do so and at a minimum, should have remained in the parking lot watching the two people until plaintiff had safely left the area. Defendants discount the expert's testimony because when asked at trial whether "the incident that *actually* occurred was foreseeable by the tavern," (emphasis added), he responded, "No. It was not." The expert's answer is not fatal to plaintiff's case. Foreseeability does not depend on whether the *exact* incident or occurrences were foreseeable. The question is whether an incident of that general nature was reasonably foreseeable. *See Morris v. Krauszer's Food Stores, Inc.*, 300 *N.J.Super.* 529, 535–36, 693 *A.*2d 510 (App.Div.1997); *Clohesy v. Food Circus Supermarkets, Inc.*, 293 *N.J.Super.* 217, 234–38, 679 *A.*2d 1230 (App.Div. 1996) (Humphreys, J.A.D., dissenting); *accord Sharp v. W.H. Moore, Inc.*, 118 *Idaho* 297, 796 *P.*2d 506, 510 (1990); *Galloway v.*

*Bankers Trust Co.*, 420 *N.W.*2d 437, 440 (Iowa 1988); *Taco Bell, Inc. v. Lannon*, 744 *P.*2d 43, 48 (Colo.1987); *Duncavage v. Allen*, 147 *Ill.App.*3d 88, 100 *Ill.Dec.* 455, 460, 497 *N.E.*2d 433, 438 (1986), *appeal denied*, 113 *Ill.*2d 573, 106 *Ill.Dec.* 46, 505 *N.E.*2d 352 (1987).

In sum, the tavern and security person owed a duty of reasonable care to plaintiff under the circumstances here. Whether that duty was breached and whether the breach proximately caused plaintiff's injury were jury questions. The complaint should not have been dismissed.

Reversed and remanded for a new trial.