702 A.2d 1351

JEFFREY SCHWARZ, DAVID A. SCHWARZ AND LUCY SCHWARZ, PLAINTIFFS–APPELLANTS, v. PORT AUTHORITY TRANSIT CORPORATION DIVISION OF THE DELAWARE PORT AUTHORITY AND THE CITY OF PHILADELPHIA, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued November 12, 1997—Decided December 2, 1997.

Before Judges LONG, KLEINER and KIMMELMAN.

*Dennis D. Karpf* argued the cause for appellants (*Mr. Karpf* and *James B. Dougherty, Jr.*, on the brief).

*Peter J. Bonfiglio, III* argued the cause for respondent Port Authority Transit Corporation (*Higgins, Long & Bonfiglio*, attorneys; *Mr. Bonfiglio*, on the brief).

*Susan L. Claypoole* argued the cause for respondent City of Philadelphia (*Claypoole & Tomlinson*, attorneys; *Ms. Claypoole*, on the brief).

The opinion of the court was delivered by

KIMMELMAN, J.A.D.

Plaintiff Jeffrey Schwarz[1] appeals from summary judgment orders entered on September 3, 1996, and September 30, 1996, dismissing his complaint against defendants Port Authority Transit Corporation Division of the Delaware Port Authority (PATCO) and City of Philadelphia (City), respectively.

The principal issue on appeal is whether PATCO can be held liable for the criminal assault of plaintiff, committed by a gang of youths, while he was walking in an underground concourse area. The area was not leased from the City and was not maintained or patrolled by PATCO. The concourse area was used by pedestrians in the same manner as if it were an above-ground city street. It was also used by patrons of PATCO, because the concourse area provided access to PATCO's ticket vending machine and the turnstiles through which patrons entered the platform area of PATCO's underground train system.

We need not recount in detail the precepts governing the consideration of the motions for summary judgment. Initially, we note that in reviewing trial court decisions on summary judgment

---

[1] Plaintiff's parents, David A. Schwarz and Lucy Schwarz, are also plaintiffs who sue in their derivative capacity.

motions, appellate courts apply the same standards as trial courts; deciding first whether there exists a genuine issue of material fact, and if not, whether the lower court's ruling on the law was correct. *Sagendorf v. Selective Ins. Co.*, 293 *N.J.Super.* 81, 94, 679 *A.*2d 709 (App.Div.1996) (citing *Allstate Redevelopment Corp. v. Summit Assoc., Inc.*, 206 *N.J.Super.* 318, 327, 502 *A.*2d 1137 (App.Div. 1985)). Under *R.* 4:46–2, a court must grant summary judgment when there is no genuine issue as to any material fact challenged and the moving party is entitled to judgment as a matter of law.

–2–

[W]hen deciding a motion for summary judgment under *Rule* 4:46–2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party. This assessment of the evidence is to be conducted in the same manner as that required under *Rule* 4:37–2(b).

[*Brill v. Guardian Life Ins. Co. of Am.*, 142 *N.J.* 520, 523, 666 *A.*2d 146 (1995).]

From our careful review of the record, the salient facts appear without genuine dispute. The lower court's ruling on the applicable law is the principal issue. Plaintiff, a New Jersey resident, was a student at an art school in the City. He travelled back and forth daily, using the PATCO transit system. Occasionally, as on the day in question, plaintiff used the PATCO station located at 13th and Locust Streets.

On September 9, 1993, at approximately 7:00 p.m., as plaintiff was returning home, he descended the stairway at the corner of Broad and Locust Streets, and began walking in an underground hallway towards the concourse at 13th and Locust Streets. About halfway down the hallway, plaintiff noticed five youths approaching him from the westerly side of the hall. Their assault on plaintiff began when one of the youths threw a saltshaker at him. The shaker missed and hit the wall. Plaintiff continued walking toward the main concourse area. When he was about fifty feet short of the turnstile area, one of the youths ran up behind plaintiff and knocked him to the floor. As plaintiff attempted to

get up, the same assailant punched him in the nose. The gang then surrounded him and rifled his pockets. They took his wallet, wrist watch, and school bag and then ran back down the hallway and disappeared. Plaintiff was able to find his crumpled train ticket on the floor. He took the next PATCO train to Camden, where he reported the assault to a PATCO policeman. Together, they returned to the station at 13th and Locust Streets, waited for a City police officer to arrive, showed the officer the location of the assault, and supplied the information needed by the officer to file a report.

There is no doubt that the assault in the concourse area occurred on property owned, maintained, and patrolled by the City. PATCO does lease property in that area from the City, but the leased property begins at the location of the turnstiles and extends away from the concourse area, to the train platform and tracks. PATCO maintains a police patrol on the property leased to it. The City patrols the concourse area outside of and away from the turnstile area, which is a public walkway for use by both PATCO patrons and members of the general public. PATCO is not given authority in the lease documents to patrol the City-owned concourse area. Neither the PATCO officer assigned by PATCO to patrol the leased station area nor the City officers assigned to patrol the City-owned concourse area witnessed the attack.

In opposition to defendants' motion for summary judgment, plaintiff's expert concluded that the general location of the assault was a crime-plagued area, that the attack on plaintiff was foreseeable, that defendants failed to provide a reasonably safe area for pedestrians and patrons of PATCO, that defendants breached their duty of care to plaintiff to warn of the potential danger, and that such failures and breaches on the part of defendants were a proximate cause of plaintiff's injuries.

In granting defendants' motion, the trial judge noted that the assault took place in an area of the concourse which was some feet short of the area where he perceived that PATCO was obliged to

exercise reasonable care for the safety of its patrons. The court reasoned that, while the assault took place on property owned, controlled, and maintained by the City, the area in which PATCO would be responsible for the safety of its patrons extended up to, but not beyond, the reach of its surveillance camera. It was shown that PATCO maintained and operated a closed-circuit TV surveillance camera at the ticket machine area. The camera's reach extended approximately forty-six feet away from the turnstiles, into the general concourse area not leased to PATCO. The assault on plaintiff occurred about fifty feet away from the turnstiles, and about four feet short of the reach of the surveillance camera. Because the assault occurred outside the camera's reach, the trial court concluded that PATCO was absolved from liability to plaintiff. Under the facts of this case, we do not view the reach of PATCO's surveillance camera as determinative of the area where its duty of care to its patrons began. Moreover, the purpose of the surveillance camera was primarily to thwart fare-beaters at the turnstiles, and not to establish an area where PATCO intended to be alert to possible assaults on patrons.

On appeal, plaintiff contends that PATCO's responsibility for the safety of its patrons extended into the general concourse area. That area was not leased by PATCO, but was nonetheless traversed by its patrons, such as plaintiff, and plaintiff argues that PATCO should have posted signs in the concourse area, warning patrons that they were in a high-risk location. Plaintiff contends that, under the totality of the circumstances, it was error for the trial judge not to let the case go forward to a jury. Additionally, plaintiff contends that the City had a duty to provide reasonably safe passage for pedestrians using the concourse area, that the risk of danger to the pedestrians was foreseeable, and that the City was not entitled to immunity.

In a case with a somewhat similar factual pattern, our Supreme Court recently reviewed the scope of the responsibility owed by the owner of a supermarket to a patron who was abducted from the supermarket's parking lot and subsequently killed. *Clohesy v.*

*Food Circus Supermarkets, Inc.,* 149 *N.J.* 496, 499–500, 694 *A.*2d 1017 (1997). In another recent case, the Court considered the responsibility that the landowner of a high-rise, multi-family residential project owed to a tenant who used a short-cut through a broken chain-link fence on the landowner's property and was assaulted on an adjacent property as he was going to a nearby supermarket. *Kuzmicz v. Ivy Hill Park Apartments, Inc.,* 147 *N.J.* 510, 512, 688 *A.*2d 1018 (1997). And, in an earlier supermarket injury case, the Court considered the responsibility of a supermarket for the assault of a patron in its parking lot during the evening, when it was known that five similar muggings of patrons had occurred there within the previous four months. *Butler v. Acme Markets, Inc.,* 89 *N.J.* 270, 274, 445 *A.*2d 1141 (1982).

We first refer to the result in *Butler,* where the Supreme Court affirmed a finding that Acme owed a duty to its customers to protect them from foreseeable criminal acts. The Court observed:

> The proprietor of premises to which the public is invited for business purposes of the proprietor owes a duty of reasonable care to those who enter the premises upon that invitation to provide a reasonably safe place to do that which is within the scope of the invitation. The measure of that care has been described as due care under all the circumstances. Negligence is tested by whether the reasonably prudent person at the time and place should recognize and foresee an unreasonable risk or likelihood of harm or danger to others. If the reasonably prudent person would foresee danger resulting from another's voluntary criminal acts, the fact that another's actions are beyond defendant's control does not preclude liability. Foreseeability of the risk that criminal acts of others would cause harm is the crucial factor.
>
> [*Butler, supra,* 89 *N.J.* at 275–76, 445 *A.*2d 1141 (citations and internal quotation marks omitted.)]

In *Clohesy,* the Supreme Court again considered the liability of a proprietor for assaults on patrons which occur on its property. The Court held that liability of the proprietor was not to be determined solely by the foreseeability of the risk of assaults on its premises, but that the totality of the circumstances controlled; and that totality included criminal activities in close proximity to the landowner's premises. *Clohesy, supra,* 149 *N.J.* at 516–17, 694 *A.*2d 1017.

However, in *Kuzmicz,* decided by the Supreme Court just a matter of months before *Clohesy,* the owner of the high-rise apartment project was absolved from responsibility for the assault on its tenant, which occurred on an adjacent property, because the owner did not control the off-premises property and derived no economic benefit from the tenant's use of the short-cut through the hole in the chain-link fence. *Kuzmicz, supra,* 147 *N.J.* at 521– 22, 688 *A.*2d 1018. A strong dissent concluded that the owner did owe a duty of care to its tenants under the circumstances, because the owner, knowing of the risks inherent in traversing the adjacent vacant lot, issued no warnings and made no effort to repair the fence. *Id.* at 541–42, 688 *A.*2d 1018 (Stein, J. dissenting).

Other recent cases contain facts which cannot be equated with those of this case. For example, in *Cassanello v. Luddy,* 302 *N.J.Super.* 267, 275–76, 695 *A.*2d 325 (App.Div.1997), a tavern and its security person were held to have had a legal duty to safeguard a patron who was assaulted by other patrons some sixty feet away from tavern premises. The altercation had begun inside the tavern. *Id.* at 273, 695 *A.*2d 325. In *Mulraney v. Auletto's Catering,* 293 *N.J.Super.* 315, 321–22, 680 *A.*2d 793 (App.Div.), *certif. denied,* 147 *N.J.* 263, 686 *A.*2d 764 (1996), a catering facility was held responsible for failing to take adequate precautionary measures to protect a patron who was killed by a passing vehicle as she crossed the highway to return to her car. She had parked in a lot across the roadway which was commonly used when the caterer's valet parking service was backed-up. *Id.* at 318, 680 *A.*2d 793. In both cases, liability was found for injuries which were caused by third persons and which occurred off-premises, but the defendants in *Cassanello* and *Mulraney* were not subject to lease provisions which withheld authority from them for protecting patrons on off-premises sites, as was PATCO.

With that background in mind, we now address whether PATCO owed a legal duty to plaintiff under the facts of this case. The scope of the duty owed is a question of law for the court, and is not for the jury to decide. The question must be determined in

this case by a consideration of the totality of the circumstances bearing upon the assault during which plaintiff was injured. *See Clohesy, supra,* 149 *N.J.* at 502, 507–08, 694 *A.*2d 1017. Whether the duty, once found to exist, has been breached, is a jury question. *Butler, supra,* 89 *N.J.* at 280, 445 *A.*2d 1141.

In our view, the pertinent circumstances bearing upon the legal determination of PATCO's duty of care are as follows: The concourse where the assault occurred was a public way, traversed by patrons of PATCO as well as by others. As a public way, the concourse was similar to an above-ground city street. PATCO depends upon the existence and maintenance of the concourse for use by its patrons. As opined by plaintiff's expert, PATCO had reason to know that the concourse was a high-risk area. However, PATCO was not authorized by its lease to police the concourse area; City police officers patrolled that area. PATCO patrolled the station area leased to it. PATCO's advertisements assuring its patrons of a safe ride, again in our view, referred to physical transportation itself. The record does not disclose any document whereby the City gave PATCO the right to either patrol outside of its leased area, or to post signs on the walls of the City's concourse area to warn pedestrians that the concourse was a high-risk area.

Under the totality of the circumstances, PATCO's duty of care for the safety of its patrons may not be extended into the area patrolled by the City police. The lease documents do not give PATCO the right to duplicate police patrols in the concourse area. Under the lease documents, PATCO was obliged to rely on the City to look after the safety of its patrons while they were pedestrians in the area not leased to it. We may not impose upon PATCO a duty of care for patrons while traversing property not leased by it, under circumstances where controlling lease documents do not authorize PATCO to undertake such duty. Accordingly, under the totality of the circumstances, we see no reason to upset the trial judge's ruling dismissing plaintiff's complaint as to

PATCO. *See Clohesy, supra,* 149 *N.J.* at 502, 507–08, 694 *A.*2d 1017.

Plaintiff next argues that the trial court was without legal reason to dismiss his complaint against the City. Plaintiff contends that the trial court erred in concluding that the City was entitled to the defense of immunity under Pennsylvania law. Plaintiff urges that New Jersey law should be applied in determining the City's liability. Plaintiff concludes that if New Jersey law applies, the City would not be immune from liability, because it is not an in-state public entity, as defined by the New Jersey Tort Claims Act, *N.J.S.A.* 59:1–3.

In choice-of-law disputes, New Jersey has rejected the traditional *lex loci delicti* conflict rule, which automatically selected the law of the place where the wrong occurred. *Lieberman v. Port Auth. of N.Y. and N.J.,* 132 *N.J.* 76, 84, 622 *A.*2d 1295 (1993); *Pfau v. Trent Aluminum Co.,* 55 *N.J.* 511, 527, 263 *A.*2d 129 (1970). Our state has adopted a more flexible approach that looks to the law of the jurisdiction having the greatest interest in governing the particular issue. *Veazey v. Doremus,* 103 *N.J.* 244, 247–48, 510 *A.*2d 1187 (1986). The New Jersey approach, and the judicial analysis it requires, is clearly stated in *Veazey* as follows:

> In tort cases, New Jersey has rejected the rule for determining choice of law based on the place where the wrong occurred, sometimes described as *lex loci delicti.* Although that rule had the virtue of certainty and predictability, its mechanical application often led to unjust results. Consequently, we have adopted the more flexible governmental-interest analysis in choice-of-law decisions.
>
> Under that analysis, the determinative law is that of the state with the greatest interest in governing the particular issue. The first step in the analysis is to determine whether a conflict exists between the law of the interested states. Any such conflict is to be determined on an issue-by-issue basis. If an actual conflict exists, the next step is to identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties. If a state's contacts are not related to the policies underlying its law, then that state does not possess an interest in having its law apply. Consequently, the qualitative, not the quantitative, nature of a state's contacts ultimately determines whether its law should apply.

> [*Id.* at 247–48, 510 *A.*2d 1187 (citations omitted).]

Based upon our analysis, it appears that the laws of Pennsylvania and New Jersey are substantially similar with regard to the liability of a "local agency" (Pennsylvania) or a "public entity" (New Jersey) for injuries resulting from third party assaults occurring on their property.

The Political Subdivision Tort Claims Act of Pennsylvania provides that local agencies shall not be liable for any damages on account of any injury to a person, except pursuant to eight enumerated exceptions; one of which permits a cause of action for injuries arising out of "the care, custody or control of real property in the possession of a local agency. . . ." 42 *Pa. Cons.Stat.* § 8542(b)(3) (1982). In *Mascaro v. Youth Study Ctr.*, 514 *Pa.* 351, 523 *A*.2d 1118, 1119 (1987), a minor who was a detainee confined to the Philadelphia Youth Study Center, escaped and assaulted the plaintiff after breaking into her residence. Plaintiff claimed that the Youth Study Center was liable, because its negligent maintenance of the detention center permitted the assailant to escape and injure plaintiff. The Pennsylvania Supreme Court reversed a lower court's finding of liability, holding:

> [T]hat the real estate exception can be applied only to those cases where it is alleged that the artificial condition or defect of the land *itself* causes the injury, not merely when it facilitates the injury by the acts of others, whose acts are outside the statute's scope of liability.
>
> We believe the Legislature has clearly precluded the imposition of liability on itself or its local agencies for acts of third parties. . . .
>
> [*Id.* at 363, 523 *A*.2d at 1124.]

More to the point, in *Johnson v. Southeastern Pa. Transp. Auth.*, 516 *Pa.* 312, 532 *A*.2d 409, 410 (1987), a subway passenger was assaulted after she had alighted from a train and was walking towards the street exit. She asserted liability against the City of Philadelphia and the Transportation Authority, on the grounds that they "knew, or should have known, that the underground tunnels were known hangouts for criminal activity and owed a duty to protect her and members of the public who use the station from such criminal assaults." *Ibid.* The Pennsylvania Supreme Court found the *Mascaro* case to control and reversed the lower court's finding of liability; holding that the real estate exception

for the imposition of liability on a local agency can be applied only where a defect of the real estate itself causes the injury. *Id.* at 314–16, 532 *A.*2d at 411.

■ New Jersey law, like Pennsylvania law, absolves public entities of liability for personal injuries, except under the conditions and circumstances provided by the Tort Claims Act. *N.J.S.A.* 59:2–1. A public entity may be liable for personal injuries caused by a dangerous condition of property that creates a reasonably foreseeable risk of the kind of injury which was incurred, but only where the public entity had attained actual or constructive notice of the dangerous condition a sufficient time prior to the injury to have taken measures to protect against it. *N.J.S.A.* 59:4–2b. The term "dangerous condition" has been held to refer to physical conditions of the property itself, and not to activities conducted on the property. *Levin v. County of Salem,* 133 *N.J.* 35, 44–45, 626 *A.*2d 1091 (1993).

Both *N.J.S.A.* 59:4–2, which imposes liability upon a public entity for dangerous conditions on its property, and *N.J.S.A.* 59:5–4, which immunizes a public entity for failure to provide police protection, were considered in *Rodriguez v. New Jersey Sports & Exposition Auth.,* 193 *N.J.Super.* 39, 472 *A.*2d 146 (App.Div.1983), *certif. denied,* 96 *N.J.* 291, 475 *A.*2d 586 (1984). In *Rodriguez,* a patron of the Meadowlands Racetrack was assaulted in the Authority's parking lot as he was walking to his automobile. The assaulted patron sued the Authority for damages for his personal injuries, claiming that the Authority did not provide adequate and effective security for him at the Meadowlands Racetrack. *Id.* at 41, 472 *A.*2d 146. We held:

> There cannot be the slightest doubt that the mere presence at the Meadowlands complex of persons with criminal intent or purpose does not constitute a dangerous condition within the meaning of the foregoing statutes so as to impose liability upon the Authority. To the contrary, liability cannot be visited upon the Authority under the Tort Claims Act by reason of the criminal assault and robbery of Rodriguez. *See Setrin v. Glassboro State College,* 136 *N.J.Super.* 329, 333, 346 *A.*2d 102 (App.Div.1975).
>
> [*Id.* at 44, 472 *A.*2d 146.]

In *Setrin v. Glassboro State College*, 136 *N.J.Super.* 329, 331, 346 *A.*2d 102 (App.Div.1975), a student filed a complaint against the college after he was assaulted on campus, while returning to his dormitory following a basketball game. We defined the legal issue as follows:

> The narrow issue thus presented is whether a state entity may be liable in tort for failure to protect against a dangerous condition when that dangerous condition is the criminal propensity of a third person on the premises rather than a physical defect in the premises.
>
> [*Id.* at 333, 346 *A.*2d 102.]

We upheld the dismissal of the injured student's complaint, concluding that the "dangerous condition" exception to a public entity's immunity was not pertinent to an assault committed by a third person on the public entity's property. *Id.* at 334–35, 346 *A.*2d 102; *see also Vanchieri v. N.J. Sports & Exposition Auth.*, 201 *N.J.Super.* 34, 40–41, 492 *A.*2d 686 (App.Div.1985), *rev'd in part on other grounds*, 104 *N.J.* 80, 514 *A.*2d 1323 (1986).

In *Wuethrich v. Delia*, 155 *N.J.Super.* 324, 326, 382 *A.*2d 929 (App.Div.), *certif. denied*, 77 *N.J.* 486, 391 *A.*2d 500 (1978), we held that municipalities are expressly immunized from tort liability for failure to provide police protection, or for the failure to provide sufficient police protection, and that a public entity, such as a municipality, is not liable in tort for failure to protect against the criminal propensity of third persons.

■ Plaintiff urges that, since the City is amenable to jurisdiction in this state, it cannot claim immunity under the Pennsylvania Political Subdivision Tort Claims Act, in view of the decision in *Lieberman, supra*, 132 *N.J.* at 84, 622 *A.*2d 1295, nor can it claim immunity under the New Jersey Tort Claims Act, since the City is not a "public entity" of this state. We disagree.

In *Lieberman*, where the plaintiff was assaulted on the premises of the Port Authority's New York bus terminal as she exited the shop of a tenant, it was held that the State of New Jersey had a more significant interest in the case than did New York, because plaintiff was a New Jersey resident and the Port Authority was operating its premises in a commercial context for the benefit of

persons such as plaintiff. *Ibid.* Central to the Court's decision was that the Port Authority, by virtue of its charter, had consented to be sued as if it were a private corporation and a private landlord in the operation of its bus terminal. *Id.* at 95, 622 *A.*2d 1295.

Unlike the Port Authority of New York and New Jersey, the City, in providing a means of ingress and egress for pedestrians through the operation, maintenance, and patrol of the concourse area, acted strictly in a governmental capacity. There were no shops, businesses, or restaurants in the area of the concourse where the assault occurred. There existed no charter or authority by virtue of which the City had consented to suits against it as if it were a private corporation or landlord. In this case, plaintiff has sued a governmental entity which, unlike the Port Authority, cannot be equated with a private corporation. *Cf. id.* at 90, 95, 622 *A.*2d 1295. The Pennsylvania Tort Claims Act affords the City full protection. *See* 42 *Pa. Cons.Stat.* 8542(b)(3); *Johnson, supra,* 532 *A.2d* at 411; *Mascaro, supra,* 523 *A.2d* at 1124.

■ Having made the analysis required by *Veazey v. Doremus,* we find that no substantial conflict exists between Pennsylvania law and New Jersey law relative to the liability of a municipality for the failure to protect against a dangerous condition on its property; such dangerous condition being the propensity of third persons to commit an assault thereon. *See Veazey, supra,* 103 *N.J.* at 247–48, 510 *A.*2d 1187.

Although a detailed analysis of the choice of law issue was not made on the record, the trial judge applied Pennsylvania law and found that the City was not liable for criminal assaults by third parties on its real property. The court relied on *Mascaro* and *Johnson.* We see no reason to depart from the trial court's ruling in dismissing plaintiff's complaint as to the City.

Accordingly, we affirm the summary judgments entered September 3, 1996, and September 30, 1996, in favor of PATCO and the City, respectively.