762 A.2d 232 (2000)
335 N.J. Super. 188
Michael IVINS, Plaintiff-Appellant,
v.
TOWN TAVERN, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued October 31, 2000.
Decided November 27, 2000.
*233 Kevin L. McGee, Millburn, argued the cause for appellant (Stuart, Clark & Wells, attorneys; James P. Carfagno, on the brief).
Joseph A. Turula, Clifton, argued the cause for respondent (Frese & Palma, attorneys; Michael J. Palma, on the brief).
Before Judges SKILLMAN and CONLEY.
The opinion of the court was delivered by CONLEY, J.A.D.
Plaintiff was injured in a fight in defendant Town Tavern's parking lot. At the close of plaintiff's case during his personal injury trial, the judge granted defendant's motion for involuntary dismissal pursuant to R. 4:37-2(b). Plaintiff appeals, contending that, accepting as true all of the evidence favorable to him, reasonable jurors could conclude that defendant breached its duty of care to provide a safe premises for its patrons. In granting the motion for involuntary dismissal, the trial judge disagreed. So do we.
Plaintiff's complaint was premised upon the well-established principle that the proprietor of business premises owes a duty to patrons "to provide a reasonably safe place to do that which is within the scope of the invitation." Failure to so provide can form a basis for a negligence claim by an injured patron. E.g., Butler v. Acme Mkts., Inc., 89 N.J. 270, 275-76, 445 A.2d 1141 (1982); Cassanello v. Luddy, 302 N.J.Super. 267, 271, 695 A.2d 325 (App. Div.1997). In attempting to prove his claim of negligence, plaintiff established the following facts.
On Friday evening, June 14, 1996, plaintiff and his fiance were at the Town Tavern having a drink with several friends, one of whom was Randy Cravens. Cravens and another patron of the tavern that night, Mike Bordner, were not friendly with each other, as Bordner was having an affair with Craven's wife. According to plaintiff, the friction between the two was "general knowledge." Moreover, the manager of the tavern had, several months prior, ejected Bordner from the tavern *234 because he "heard through the customers [that Bordner] was at [another bar] and kicked the hell out of somebody." Bordner was thereafter allowed to again patronize the tavern after he agreed that he would not "start trouble." The manager, however, warned the bartenders to keep an eye on Bordner, to serve him only so long as he "behaves," and "[i]f he does anything wrong ... throw his ass out." On this particular night, Cravens and Bordner, after leaving the tavern, engaged in a fight in its parking lot, into which plaintiff attempted to intercede to save his friend from harm, only to be injured himself.
We pause at this point to observe the comment in Cassanello v. Luddy, supra, 302 N.J.Super. at 274-75, 695 A.2d 325, that "[t]averns are natural hot beds of violence." As to this particular defendant tavern, however, the record does not so reflect. This is not to say there was no evidence of fighting or assaults in or outside the premises prior to June 14, 1996. Plaintiff did present some evidence as to that. But what it shows does not warrant a characterization of the tavern as a "hot bed of violence."
That evidence, depicting five reports of "fight/assaults" during 1995 and 1996 prior to June 14, is as follows. On April 28, 1996, at 2:42 a.m., there was call to the police reporting a fight/assault at the tavern. When the police arrived, they found nothing untoward and classified the call as a "10-35" or "unfounded." Where on the premises the alleged incident occurred, who made the call and who was involved was not known. On April 14, 1996, at 2:03 a.m., police responded to a call reporting a fight/assault in the tavern's parking lot. Upon arrival, they found nothing untoward and the call was classified as unfounded. Who made the call and who was involved was not known. On April 8, 1996, at 2:15 a.m., the police responded to a call reporting a fight/assault in the tavern's parking lot. The police report of the incident stated "fight in lot; subject drunk." Nothing else about the incident or who made the call was known. On February 8, 1996, at 11:15 p.m., police responded to a call reporting a fight/assault at the tavern. Upon arrival nothing untoward was observed and the call was classified as unfounded. Where on the premises the alleged incident occurred, who was involved, and who made the call was unknown. Finally, on September 16 or 17, 1995, at 11:40 p.m. the police responded to a call reporting a fight/assault inside the tavern. Upon arrival, they observed a fight between intoxicated patrons over a pool game. The fight was broken up, but no complaint was signed by the parties involved.[1]
It was plaintiff's claim that these prior incidents were sufficient to place defendant on notice such that its duty of care to its patrons obligated it to provide a security guard or bouncer in the parking lot. The trial judge remarked, however,
I don't think that these five incidences, either individually or taken as a whole, are sufficient to put the defendant on... such notice that he should have a guard or someone controlling the parking lot during the day or early evenings. These all occurred late at night. We don't know who called the police. We don't know the nature or extent of the [incident] ... and I don't think that a reasonable jury can conclude that these five events, occurring over a period of a year and a half, would require a reasonable tavern owner to post guard in the parking lot because that's the only way an event such as this will be prevented.
As to the particular circumstances inside the tavern prior to the fight and while plaintiff was there, the record reveals the following. There were two employees at the bar, one of whom had worked there for *235 over a year and who had, on occasions of patron misbehavior, "flagged" and/or ejected patrons. There were no other employees, bouncers or security guards either inside or in the parking lot of the tavern. However, the attendant circumstances were not out of the ordinary or suggestive of a potential problem such that the absence of bouncers or security guards might be questioned. Indeed, during cross-examination of plaintiff, he described the atmosphere inside the tavern thusly:
Q. Mr. Ivins, you had no problems with anybody in the bar that evening, right?
A. No, I didn't.
Q. Okay. As a matter of fact, you didn't see any fights in the bar that evening, right?
A. No.
Q. You didn't hear any hostile words between anyone in the bar, did you?
A. For some reason, I thinkit'sI believe there might have been a few words back and forth from across the bar. Mike Bordnerthey were over there by the pool table, him andI believe he had a couple friends with him, and Randy, but then it was just like a couple comments back and forth, and I believe that was it.
Q. Okay, but that was it, right?
A. Yes.
Q. You'd say the bar was peaceful that evening, right?
A. Yes.
Q. Okay, and nothing inside that suggested there'd be any problems outside, right?
A. No.
Q. In fact, the place was pretty much dead, wasn't it?
A. I've seenit was just a regular, you knowyeah, it was not rowdy or nothing.
This was the sum and substance of plaintiff's proofs, even viewed most favorably for him as the trial judge was required to do and as we must do. Dolson v. Anastasia, 55 N.J. 2, 5, 258 A.2d 706 (1969). We agree with the judge's conclusion that the proofs were simply insufficient to present a jury issue on plaintiff's claim of negligence by the tavern.
Proof of negligence requires, of course, establishment of a duty of care and a breach thereof proximately causing the harm. As we have previously said, a proprietor of a business owes to the patron a duty of ensuring a reasonably safe premise, including egress and egress thereto, to engage in that which is commercially offered. Beyond that, what precise actions that general duty of care may require under the attendant circumstances, ordinarily is for the court to decide. Clohesy v. Food Circus Supermarkets, Inc., 149 N.J. 496, 502, 694 A.2d 1017 (1997). "`The actual imposition of a duty of care and the formulation of the standards defining such a duty derive from considerations of public policy and fairness.'" Williamson v. Waldman, 150 N.J. 232, 245, 696 A.2d 14 (1997) (quoting Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439, 625 A.2d 1110 (1993), and citing Carter Lincoln-Mercury v. EMAR Group, 135 N.J. 182, 194-95, 638 A.2d 1288 (1994)). The inquiry is to focus upon the "totality of the circumstances." Clohesy v. Food Circus Supermarkets, Inc., supra, 149 N.J. at 508, 694 A.2d 1017. See generally J.S. v. R.T.H., 155 N.J. 330, 337-40, 714 A.2d 924 (1998). Those circumstances involve a number of factors, often said to include: (1) the relationship of the parties; (2) the nature of the attendant risk; (3) the ability and opportunity to exercise control; (4) the public interest in the proposed solution; (5) the objective foreseeability of harm. Alloway v. Bradlees, Inc., 157 N.J. 221, 230, 723 A.2d 960 (1999).
As we recently recognized, "[p]erhaps the most significant factor in determining the scope of a party's duty is the concept of foreseeability," Taylor by Taylor v. Cutler, 306 N.J.Super. 37, 42, 703 A.2d 294 (App.Div.1997), aff'd, 157 *236 N.J. 525, 724 A.2d 793 (1999), and, further, "[f]oreseeability of harm is the crucial factor in determining whether a duty exists to take reasonable measures to guard against the criminal activity of others," Blunt v. Klapproth, 309 N.J.Super. 493, 512, 707 A.2d 1021 (App.Div.), certif. denied, 156 N.J. 387, 718 A.2d 1216 (1998). See Williamson v. Waldman, supra, 150 N.J. at 251, 696 A.2d 14 ("[t]he overriding principle governing the determination of a duty is the general obligation to avoid forseeable harm to others."). Compare Clohesy, supra, 149 N.J. 496, 694 A.2d 1017, with Kuzmicz v. Ivy Hill Park Apartments, Inc., 147 N.J. 510, 688 A.2d 1018 (1997).
Such foreseeability, as it impacts upon duty determinations, is based on "`the knowledge of the risk of injury to be apprehended.'" Clohesy, supra, 149 N.J. at 503, 694 A.2d 1017 (quoting Hill v. Yaskin, 75 N.J. 139, 144, 380 A.2d 1107 (1977)). "`The risk reasonably to be perceived defines the duty to be obeyed.'" Ibid. Put somewhat differently, "the crucial element in determining whether or not to impose a duty rests on whether the defendant was reasonably able to comprehend that his [alleged negligent] conduct could injure as it did." Taylor by Taylor v. Cutler, supra, 306 N.J.Super. at 45, 703 A.2d 294 (citing Carvalho v. Toll Bros. and Developers, 143 N.J. 565, 572-73, 675 A.2d 209 (1996), and Carter Lincoln-Mercury, supra, 135 N.J. at 194, 638 A.2d 1288). And see Schwarz v. Port Auth. Transit, 305 N.J.Super. 581, 702 A.2d 1351 (App. Div.1997), certif. denied, 153 N.J. 214, 708 A.2d 65 (1998); Blunt v. Klapproth, supra, 309 N.J.Super. at 510-16, 707 A.2d 1021. Even as to foreseeable risks, however, it has been cautioned that "`not all foreseeable risks give rise to duties.'" Williamson v. Waldman, supra, 150 N.J. at 251, 696 A.2d 14 (quoting Dunphy v. Gregor, 136 N.J. 99, 108, 642 A.2d 372 (1994)).
Here, plaintiff contends that defendant should have reasonably foreseen the eventuality of a fight in its parking lot and should have, therefore, employed bouncers or security guards who, had they been present, would have prevented the fight. An understanding of what type of evidence is needed to impose a duty such as this upon a proprietor of a business premises may be gleaned from consideration of the factors found sufficient in other cases.
In Clohesy v. Food Circus Supermarkets, Inc., supra, 149 N.J. 496, 694 A.2d 1017, for instance, the Supreme Court reversed summary judgment for a store-owner sued by executrix of customer who was abducted from the store's parking lot. Factors the court considered in determining that a jury issue on duty of care existed were: the location of the store next to a liquor store and gas station, the lack of warnings and security in the parking lot, the lack of visibility of the parking lot from the store, sixty reported incidents on or near the store over a two-and-one-half-year period, (of these sixty reported incidents only four were assaults as compared to thirty shopliftings), the increase of crime on the store's property from four incidents in 1989 to thirteen in 1991, and evidence from a security expert. Id. at 503-04, 694 A.2d 1017.
Similarly, in Butler v. Acme Markets, Inc., supra, 89 N.J. 270, 445 A.2d 1141, the Court concluded that it was for the jury to determine whether the defendant business owner exercised reasonable care in performance of its duty to safeguard its business invitees from the criminal acts of third persons. Id. at 270, 445 A.2d 1141 (upholding the reversal of trial court's judgment notwithstanding the verdict and reinstating jury's verdict for customer attacked in store's parking lot at night). In so holding, the court observed that there had been seven muggings in the store's parking lot within a year, five of the muggings occurred at night within four months from the attack, the store only had one security officer whose main duty was to patrol inside the store, and there were no signs or warnings advising patrons of the possibility of danger. Id. at 274-75, 445 A.2d 1141.
*237 Recently, we held that a tavern and its security employee had a legal duty to take reasonable measures to safeguard plaintiff patron when he left the premises, concluding that the question of whether this duty was breached and, if so, whether it proximately caused the patron's injuries were jury questions. Cassanello v. Luddy, supra, 302 N.J.Super. 267, 695 A.2d 325 (reversing trial court's involuntary dismissal for tavern at end of plaintiff's case). There an altercation between plaintiff and two other patrons had occurred inside the tavern, requiring the security employee to separate the parties. When plaintiff left the tavern to go to his car in the tavern's parking lot, the two other patrons, by then intoxicated, continued to threaten and harass him. His request to the security employee to call the police fell on deaf ears. The two followed him from the lot and, shortly thereafter, assaulted him with a hammer. In reversing the involuntary dismissal, we observed that "[t]he tavern derives an economic benefit from according its patrons, like plaintiff, protection from such altercations[,]" and also noted a state regulation that imposes a duty to protect tavern patrons "in or upon the premises." Id. at 272-73, 695 A.2d 325 (citing N.J.A.C. 13:2-23.6(a)(2)).
There is nothing here even remotely comparable to the circumstances in Clohesy, Butler, or Cassanello. The evidence of incidents during 1995 up to June 14, 1996, establishes only two actual incidents of violence, one inside the bar over a pool game and one in the parking lot involving an intoxicated person. Moreover, there was no evidence that the tavern was located in an area that was particularly susceptible to violence. And, although the aggressor was known by the tavern and its employees to have a potentially violent nature and the employees may have been aware of the friction between the aggressor and plaintiff's friend, there was no evidence of any events occurring inside the tavern that night that should have put the tavern employees on notice that a possible fight was in the works, triggering a duty on their part to take preventive measures.
Affirmed.
NOTES
[1] Though excluded from evidence, the record reflects three other reported incidents during this time frame: a call reporting criminal mischief, a call reporting a vehicle left in the parking lot, and a report of careless driving.