**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5228-15T2

JONATHAN LLOYD and MELY E.
LLOYD, his wife,

    Plaintiffs-Appellants,

v.

UNDERPASS ENTERPRISES, INC.
t/a THE HAREM,

    Defendant-Respondent.

_____

        Submitted July 25, 2017 — Decided August 4, 2017

        Before Judges Reisner and Suter.

        On appeal from the Superior Court of New
        Jersey, Law Division, Union County, Docket No.
        L-1503-14.

        Lanza & Lanza, LLP, attorneys for appellant
        (John R. Lanza, of counsel and on the brief).

        Muscio & Kaplan, LLC, attorneys for respondent
        on Counts One and Six (Michael Muscio, on the
        brief).

PER CURIAM

    Plaintiffs Jonathan and Mely Lloyd appeal orders dated May

13 and June 27, 2016 that dismissed their personal injury complaint

against Underpass Enterprises, Inc. t/a The Harem (the Harem).  We affirm.

In March 2013, after playing poker tournament style in a hotel room with co-workers, plaintiff Jonathan Lloyd (Lloyd) agreed with other players to go to "the Harem," which was a gentleman's club.  Cecil George, who was at the poker game, invited Meg James, who was not at the game, to join him at the Harem.  Lloyd arrived at the Harem around midnight.  Lloyd testified in his deposition that George was inebriated.  About an hour later, Lloyd saw George fighting with another person, who may have been George's friend Meg James.  The Harem's bouncers broke up the fight and then escorted George and the other combatant outside to the parking lot.  Lloyd followed.  After they were all outside, the bouncers stood near the door at the Harem's entrance.  Lloyd was standing near George when he saw the other combatant rushing quickly, looking "menacing and coming at [them] with intent."  Lloyd stepped in between George and the person rushing at them to "put [him]self as a barrier between [the other combatant] and [George]."  Lloyd stated "[e]verything happened quickly."  He awoke four days later in the hospital, having sustained a serious head injury.

In April 2014, Lloyd and his wife filed a personal injury complaint against the Harem.  The Harem's motion for summary

judgment was granted in a May 13, 2016 order, which dismissed the negligence and per quod counts.[1]

The court found the Harem did not have a legal duty to the plaintiffs because the incident with Lloyd was not foreseeable. Relying on Pequero v. Tau Kappa Epsilon, 439 N.J. Super. 77 (App. Div. 2015), in finding a lack of foreseeability, the court found it was "not foreseeable that a third party, not in any way involved in the fight inside [would] voluntarily leave[] and put[] himself in between the two formerly fighting patrons . . . ." The court distinguished our opinion in Cassanello v. Luddy, 302 N.J. Super. 267 (App. Div. 1997), because "[Lloyd] was not in any way involved in the altercation in this case. It's not foreseeable that he would have been in any kind of danger outside. He did not ask for help and, indeed, he placed himself in harm's way voluntarily." As such, the court found even if there were a duty by the Harem to protect patrons, it did not continue under these circumstances.

On appeal, Lloyd contends the court erred because the Harem had actual knowledge of a dangerous condition based on the fight between two patrons inside the club and had a duty to protect him

---

[1] The remaining counts were voluntarily dismissed with prejudice, except Count Three. That count was against John Doe employees of the Harem and was dismissed by the court on June 26, 2016 for the same reasons the May 13, 2016 order dismissed Counts One and Six.

from a known danger. He alleges the club's duty was breached when the bouncers merely escorted the combatants outside to the parking lot and did not protect him.

We review a trial court's order granting or denying summary judgment under the same standard employed by the trial court. W.J.A. v. D.A., 210 N.J. 229, 237 (2012). The question is whether the evidence, when viewed in a light most favorable to the non-moving party, raises genuinely disputed issues of fact sufficient to warrant resolution by the trier of fact, or whether the evidence is so one-sided that one party must prevail as a matter of law. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

The determination of whether a duty of care exists is a legal question, the analysis of which depends upon weighing and balancing "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and public interest in the proposed solution." Hopkins v. Fox & Lazo, 132 N.J. 426, 439 (1993) (citing Goldberg v. Housing Auth., 38 N.J. 578, 583 (1962)); see also Pequero, supra, 439 N.J. Super. at 88 (citations omitted). "[W]hether a duty exists is ultimately a question of fairness." Id. at 89 (alteration in original) (quoting Weinberg v. Dinger, 106 N.J. 469, 485 (1987)). "The application of these four factors is 'both very fact-specific and principled[.]'" Ibid. (quoting Hopkins, supra, 132 N.J. at 439).

"The foreseeability of the harm involved is one of the many considerations in assessing whether a duty is owed." Ibid. "Foreseeability is essentially 'based on the defendant's knowledge of the risk of injury.'" Id. at 93 (quoting Podias v. Mairs, 394 N.J. Super. 338, 350 (App. Div.), certif. denied, 192 N.J. 482 (2007)).

Here, the court did not err in granting summary judgment that dismissed plaintiffs' complaint. Lloyd was not involved in the fight and simply decided to step in to help a friend. As Lloyd stated in his deposition, "[e]verything happened quickly." There was no evidence of prior similar incidents, that the fight would continue outside, or that the Harem was familiar with the combatant. Under these circumstances, the court correctly determined that it was "not foreseeable that [Lloyd] would have been in any kind of danger outside," particularly when he decided to shield one person from another. We agree that this is not like Cassanello, supra, 302 N.J. Super. at 269, where a tavern patron who had been involved in an altercation "was attacked by two other patrons after he had left the tavern." Rather, it is more analogous to Pequero, supra, 439 N.J. Super. at 93, where we found no duty by a fraternity club for a shooting that occurred at a party. In that case, we found "it [could not] be reasonably

foreseen that plaintiff would attempt to intercede in the altercation." Ibid.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION