293 N.J. Super. 315 (1996)
680 A.2d 793
ANDREW MULRANEY, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF FLORENCE MULRANEY AND JULIANNE MULRANEY MESSINA, PLAINTIFF-APPELLANT,
v.
AULETTO'S CATERING, NATIONAL VALET PARKING SERVICES AND ELITE PARKING, INC., T/A NATIONAL PARKING SERVICES, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued July 2, 1996.
Decided August 22, 1996.
*317 Before Judges LONG and SKILLMAN.
Jeffrey M. Keiser, argued the cause, for appellant (Mr. Keiser, of counsel; Dennis E. Block, on the brief).
Richard T. Barth, argued the cause, for respondent Auletto's Catering (Law Office of Bernadette A. Duncan, attorneys; Mr. Barth, on the brief).
William J. Thomas, argued the cause, for respondent National Parking Service, Inc. (Crawshaw, Mayfield, Riordan, Turner, O'Mara, Donnelly, Thomas & McBride, attorneys; Lynn M. Burgess, on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
This is a wrongful death action. The decedent Florence Mulraney was an invitee at a "Bridal Fair" held by defendant Auletto's Catering (Auletto's) at its premises in Deptford Township on the evening of January 13, 1992. Auletto's contracted with defendant National Valet Parking Service (Valet Parking) to provide valet parking for persons attending this function.[1] Upon arriving at the fair with her daughter, decedent observed a line of people waiting for the valet parking service, so she decided to park her own car in an exterior part of the parking lot. However, after the decedent parked, one of Valet Parking's employees told her that the *318 parking lot was reserved for valet parking and that she would have to move her car to another location. The decedent then drove towards an adjoining parking lot also owned by Auletto's but found the entrance blocked by a car. At this point, the decedent, seeing other cars parking in an area located across an adjoining county highway, followed them, parked her car, and attended the bridal fair. As the decedent was crossing the highway to return to her car, she was struck by a passing vehicle and killed.
This suit was brought by the decedent's husband, Andrew Mulraney, as administrator of her estate and individually, and by decedent's daughter, Julianne Mulraney Messina, who observed the accident and her mother's death. Plaintiffs allege that defendants knew or should have known that persons attending functions at Auletto's, including the Bridal Fair, would park in the area across the county highway. Plaintiffs further allege that defendants knew that crossing the county highway to attend functions at Auletto's was dangerous but that they had "failed to appropriately warn oncoming traffic of pedestrian traffic and were otherwise negligent in the protection of the safety of attendees at the Bridal Fair."
Auletto's moved for summary judgment on the ground that it did not own or control the area where the decedent parked and consequently did not have a duty to provide a safe means of passage to that area. In opposing the motion, plaintiffs relied upon the deposition of Stephen Moylan, a Deptford Township police officer who coordinated the assignment of special duty officers for private functions, including functions at Auletto's. Officer Moylan testified that Auletto's patrons used the area across the county highway for parking on some occasions. Moylan further testified that he had expressed concern to Auletto's about "the safety of the people [who parked] across the street and [had to cross] the road." Moylan also indicated that the police department had suggested to Auletto's that it purchase signs to place on the side of the county highway in order to warn motorists *319 to "slow down or become more alert" as they approached the area where pedestrians might be crossing. Auletto's accepted this suggestion and purchased the signs, which were subsequently used on some occasions. However, on the night the decedent was killed, Auletto's did not hire special duty officers or take any other steps to protect persons who parked on the opposite side of the highway to attend the Bridal Fair.
The trial court granted Auletto's motion for summary judgment, concluding that a commercial establishment has no duty to provide safe passage across a highway to an area owned by a third party, even if it is aware that its patrons use that area for parking. The court subsequently granted Valet Service's motion for summary judgment on the same basis.
Plaintiffs appeal from summary judgments in favor of Auletto's and Valet Services.[2] We reverse.
"The proprietor of premises to which the public is invited for business purposes of the proprietor owes a duty of reasonable care to those who enter the premises upon that invitation to provide a reasonably safe place to do that which is within the scope of the invitation." Butler v. Acme Mkts., Inc., 89 N.J. 270, 275, 445 A.2d 1141 (1982). Although a business proprietor's duty of care is generally expressed in terms of the duty that an owner or occupier of land owes to persons who come onto the land, see, e.g., Bozza v. Vornado, Inc., 42 N.J. 355, 359-60, 200 A.2d 777 (1964), the duty extends beyond a business simply safeguarding its customers from dangerous physical conditions on its property. Thus, we have held that the duty extends to a retail store protecting its customers from another customer's dog which was *320 tied to a pole near the store entrance, Nakhla v. Singer-Shoprite, Inc., 205 N.J. Super. 184, 500 A.2d 411 (App.Div. 1985), certif. denied, 102 N.J. 399, 508 A.2d 257 (1986), and to a bar protecting its patrons from physical assault by other patrons in its parking lot, Dubak v. Burdette Tomlin Memorial Hosp., 233 N.J. Super. 441, 458-59, 559 A.2d 424 (App.Div.), certif. denied, 117 N.J. 48, 563 A.2d 817 (1989), and our Supreme Court has held that the duty extends to a supermarket protecting its customers from robberies in its parking lot, Butler v. Acme Mkts., Inc., supra. Most pertinent to this appeal, we have held that this duty extends to a business proprietor providing reasonably safe passage for patrons who must cross a highway to reach its parking lot. Warrington v. Bird, 204 N.J. Super. 611, 617-18, 499 A.2d 1026 (App.Div. 1985), certif. denied, 103 N.J. 473, 511 A.2d 653 (1986). In all these cases, the business proprietor's alleged liability was predicated upon negligence in the conduct of its business rather than a dangerous physical condition of its premises: in Nakhla, the failure to prevent customers from leaving their dogs near the entrance to the store; in Dubak, the failure to summon the police when a disturbance occurred in the parking lot; in Butler, the failure to provide sufficient private security protection or to warn customers of the danger of criminal attack; and in Warrington, the failure to provide any illumination in the area used by customers to cross the highway or to provide signs to warn motorists or patrons of the danger of pedestrian traffic across the roadway. Therefore, these cases are all illustrations of the Court's observation in Butler that "[t]he historical classifications of the degrees of care owing to visitors upon land are undergoing gradual change in the law in favor of a broadening application of a general tort obligation to exercise reasonable care against foreseeable harm to others." 89 N.J. at 277, 445 A.2d 1141.
This evolution in the law was clearly recognized in Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 438, 625 A.2d 1110 (1993), where the Court, in addressing whether a real estate broker owes a duty of care to potential buyers who are shown a home in an open house tour, directly questioned the applicability of the common *321 law doctrine of premises liability to determine the scope of a business' duty of care towards it customers:
The inquiry should be not what common law classification or amalgam of classifications most closely characterizes the relationship of the parties, but ... whether in light of the actual relationship between the parties under all of the surrounding circumstances the imposition on the broker of a general duty to exercise reasonable care in preventing foreseeable harm to its open-house customers is fair and just.
The Court concluded that instead of tort liability turning on the common law methodology of premises liability, the determination "[w]hether a person owes a duty of reasonable care toward another [should turn] on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy." Id. at 439, 625 A.2d 1110. "That inquiry involves identifying, weighing, and balancing several factors  the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." Ibid. The Court also indicated that the determination of whether a party owes a duty of reasonable care towards another is "very fact-specific." Ibid. Applying the relevant factors, the Court concluded that a real estate broker may be held liable under some circumstances for a dangerous condition in a house that he or she has shown to potential buyers. Id. at 440, 625 A.2d 1110.
The factors identified in Hopkins point to the conclusion that a business proprietor has a duty, at least under some circumstances, to undertake reasonable safeguards to protect its customers from the dangers posed by crossing an adjoining highway to an area the proprietor knows or should know its customers will use for parking. First, the relationship between a business enterprise and persons invited to its premises to further its commercial interests has traditionally required the exercise of "a higher degree of care" than is owed to other persons. Hopkins v. Fox & Lazo Realtors, supra, 132 N.J. at 433, 625 A.2d 1110. Second, a pedestrian who has to cross a highway at night in an area that is not marked for pedestrian traffic faces a substantial risk of being struck by a passing motorist. Third, a substantial *322 commercial enterprise that owns property immediately adjoining a highway has the ability to illuminate an area where pedestrians are likely to cross and/or to provide warnings of the danger both to motorists and to pedestrians and, if necessary, to hire off duty police officers to control motor vehicular and pedestrian traffic. See Warrington v. Bird, supra, 204 N.J. Super. at 617, 499 A.2d 1026. Fourth, we are satisfied that it is fair and just to impose a duty of care upon a business enterprise, such as Auletto's, to provide safe passage for customers it knows or has reason to know may park on the opposite side of an adjoining highway, at least where a dangerous condition arises only on those isolated occasions when the business conducts special functions that attract an unusually large number of attendees. In fact, Auletto's acknowledged the risk posed to its patrons in crossing the adjoining highway, and its responsibility for their safety, by hiring off-duty police officers to regulate traffic for some functions and by purchasing signs that could be placed along the highway to warn motorists that pedestrians might be crossing the highway.
The circumstances of this case are substantially different from those in MacGrath v. Levin Properties, 256 N.J. Super. 247, 606 A.2d 1108 (App.Div.), certif. denied, 130 N.J. 19, 611 A.2d 656 (1992), in which we held that a shopping center did not have a duty to provide its customers with a safe means of passage across an adjoining state highway. We noted that the State controlled traffic flow as well as pedestrian passage across the highway by means of traffic signals that included a pushbutton for pedestrians. Id. at 249, 606 A.2d 1108. Under these circumstances, we concluded that "it cannot be fairly suggested that the owner [of a shopping center] owes a duty to protect the pedestrian from the obvious hazards of the abutting highway." Id. at 253, 606 A.2d 1108. We also observed that "[l]iability rests with the State, if there exists a dangerous condition in the public way which caused the accident." Ibid. In contrast, plaintiffs do not seek to hold Auletto's liable for a dangerous condition created by the physical layout of the county highway or the system of vehicular and pedestrian control established by the responsible governmental *323 agency. Instead, plaintiffs claim that Auletto's negligently failed to take any measures to protect its customers from a transient dangerous condition created by Auletto's own business operation, specifically, the conduct of a large function which it knew or should have known would involve some patrons parking on the opposite side of a poorly illuminated county highway that had no crossing for pedestrians. Therefore, unlike in MacGrath, the recognition that Auletto's owed a duty of care to those patrons does not require the imposition of "a similar duty upon all proprietors owning property abutting a public street who enjoy the `benefit' of traffic access from the street to their business enterprises." Id. at 255, 606 A.2d 1108.
We conclude for similar reasons that section 349 of the Second Restatement of Torts, which the court relied upon in MacGrath, has no applicability to plaintiffs' claims. This section states that a "possessor of land over which there is a public highway ... is not subject to liability for physical harm caused to travelers upon the highway ... by his failure to exercise reasonable care (a) to maintain the highway ... for their use, or (b) to warn them of dangerous conditions in the way which, although not created by him, are known to him and which they neither know nor are likely to discover." Restatement (Second) of Torts, § 349 (1965). Plaintiffs' claim against Auletto's is not based upon an alleged unsafe condition of the highway but rather upon a transient dangerous condition resulting from Auletto's conduct of a special function at its premises. Moreover, the decedent was not a traveler upon the highway but rather Auletto's business invitee.
Our decision in Ross v. Moore, 221 N.J. Super. 1, 533 A.2d 398 (App.Div. 1987), upon which defendants rely, involved the liability of a public entity under the Tort Claims Act and thus is irrelevant to the scope of a business proprietor's duty of care to its patrons. Insofar as dictum in Ross may suggest that ownership or control over a parking area is a precondition of a business proprietor's duty to provide "reasonable safe passage" to that area for its *324 patrons, id. at 6-7, 533 A.2d 398, we respectfully disagree for the reasons previously set forth in this opinion.
Finally, we reject defendants' argument that they cannot be held liable because a private party is prohibited from erecting traffic control devices along a public highway. See N.J.S.A. 39:4-183.1 to -183.6. Auletto's could have taken a variety of measures for the protection of its patrons who had to cross the county highway to reach their cars that would not have involved the erection of traffic signs which would fall within this prohibition, including the hiring of off-duty police officers to control traffic and the posting of signs to warn patrons of the danger involved in crossing the highway.
We recognize that there is a substantial dispute as to whether Auletto's should have reasonably anticipated that some of the persons attending the Bridal Fair would park in the area across the county highway. However, this is a factual issue which must be resolved by the jury at trial.
Accordingly, we reverse the summary judgment in favor of Auletto's. Since the summary judgment in favor of Valet Parking was granted on the same basis as the summary judgment in favor of Auletto's, we also reverse that summary judgment. We express no opinion as to whether Valet Parking may be entitled to summary judgment on other grounds, because the record is inadequate to decide that question.
NOTES
[1] There apparently is a factual dispute as to whether the entity with which Auletto's contracted to provide valet parking was defendant Valet Parking or defendant Elite Parking, Inc.
[2] The parties have advised us that a default was entered against Elite Parking, Inc., but that it has no assets or insurance coverage and is defunct. Although no judgment has been entered against Elite Parking and hence the appeal is technically interlocutory, it would not serve any purpose to require a judgment or a dismissal as to Elite Parking before addressing the issue presented by this appeal. Therefore, we grant plaintiffs leave to appeal nunc pro tunc. R. 2:4-4(b)(2).