859 A.2d 1246 (2004)
372 N.J. Super. 567
Alvin PUTERMAN and Zarina Puterman, Plaintiffs,
v.
CITY OF LONG BRANCH, a municipal Corporation of the State of New Jersey, Rudolph F. Primavera Realty Corp., John Does 1-10, Defendants.
Superior Court of New Jersey, Law Division, Civil Part.
Decided July 19, 2004.
*1247 Robert L. Witek, II, Oceanport, for plaintiffs (Resnikoff, Resnikoff & Witek, attorneys).
Robert D. Rosenwasser, Somerset, for defendant, Rudolph F. Primavera Realty Corp. (Golden, Rothschild, Spagnola, Lundell, Levitt & Boylan, attorneys, Bridgeport).
Paul J. Soderman, Fairfield, for defendant, City of Long Branch (Zucker, Facher and Zucker, attorneys).
LOCASCIO, J.S.C.
The issue, in this motion for summary judgment brought by defendant Rudolph F. Primavera Realty Corp., is whether a commercial landowner is liable for injuries sustained by a business invitee who, enroute to defendant's strip shopping mall after parking his car in an adjacent municipal parking lot, slipped on ice while attempting to traverse the lot. For the reasons set forth herein, this court holds that a commercial property owner does not have a duty to remedy an icy condition in an adjacent parking lot owned by a municipality and used in common with other business owners and establishments.
On December 21, 2000, plaintiff parked in a municipal parking lot that was owned by defendant City of Long Branch. After exiting his car, plaintiff proceeded across the lot intending to patronize the West End Pharmacy (one of the tenants of defendant Primavera). Plaintiff was injured, while walking between two parked cars, when he slipped and fell on black ice. Thereafter, plaintiff instituted suit against the landowner of the adjacent shopping center and the City of Long Branch.[1] Plaintiff contends that, because the landlord informed invitees that parking was available in the municipal lot, and knew that invitees would park in the lot, the commercial landowner breached its duty to provide a safe method of ingress and egress to the strip shopping mall.
*1248 It is well settled that commercial landowners are responsible for maintaining abutting sidewalks in a reasonably good condition and are liable to injured pedestrians for their negligent failure to do so. Stewart v. 104 Wallace St., Inc., 87 N.J. 146, 157, 432 A.2d 881, 887 (1981). Recently the court, in Monaco v. Hartz Mountain Corp., 178 N.J. 401, 414-15, 840 A.2d 822, 831 (2004) (emphasis added), succinctly explained a commercial landlord's duty:
The legal principles governing a commercial landlord's liability are relatively straightforward. Such a landowner must exercise reasonable care for an invitee's safety. That includes making reasonable inspections of its property and taking such steps as are necessary to correct or give warning of hazardous conditions or defects actually known to the landowner. Hopkins [v. Fox & Lazo Realtors], 132 N.J. [426,] 434, 625 A.2d 1110[, 1113 (1993)]. The landowner is liable to an invitee for failing to correct or warn of defects that, by the exercise of reasonable care, should have been discovered. Ibid.

Moreover in a long line of cases, our courts have extended a commercial landowner's duty, when warranted by the facts, to cases in which the landowner had no control over the dangerous condition and the condition was not located on its property.
However, the facts of the instant matter, when compared to the facts in Monaco, do not warrant extending the duty to this landlord. In Monaco, plaintiff was injured when a traffic sign located on a sidewalk, eight feet from the front entrance of defendant's building, became dislodged by the wind and struck plaintiff in the head. The court, in reversing a directed verdict in favor of defendant Hartz, summarized the relevant facts as follows:
Hartz Mountain is a commercial landowner that earns income by renting its premises to the Newark Board of Education. Monaco is an employee of the Board and thus an invitee of Hartz. Monaco was injured on Hartz's own property, which is located on a street that is a virtual wind tunnel. That injury occurred on a windy day when a sign installed and maintained by the City flew out of a sidewalk installed and maintained by Hartz and struck Monaco. That sign, which limited parking to permit holders, was installed to advance the interests of Hartz and its tenants. Under the relevant Newark Municipal ordinance, the sidewalk was the responsibility of Hartz. See also, Stewart v. 104 Wallace Street, Inc., 87 N.J. 146, 432 A.2d 881 (1981)(commercial landowners are responsible for maintaining abutting sidewalks). Prior to the accident, the sidewalk directly beneath the sign was cracked. In the months prior to the accident, witnesses noticed that the sign was "crooked," "would squeak and move when the wind blew" and was "bent" and "wiggling." LaPlaca, the property manager of Hartz, acknowledged that Hartz installed the sidewalk and is responsible for its maintenance. He further stated that he personally inspected the area around the scene of the accident two or three times per week "including sidewalks and signs in front of 2 Cedar Street extending all the way down the block of Cedar Street."
Moss, the plaintiffs' expert, testified that a minimally competent inspection of the area would have revealed the condition at the base of the sign. He also stated that the damage to the sign was foreseeable based on past history of damage resulting from the sign being struck by large trucks and due to the windy conditions on Cedar Street. According to Moss, Hartz may not have *1249 had the right to repair the sign, but it had a duty under accepted building and traffic standards, at least to inspect the sign and to notify the City of defects in it.
[Id. at 413-14, 840 A.2d at 830-31.]
The facts of Monaco are significantly distinguishable from the within matter in the following respects. In the instant matter:
1. the accident did not occur on defendant's property; it occurred on a parking lot owned by the City of Long Branch;
2. defendant did not install or maintain the parking lot;
3. the parking lot was not installed solely to advance the interests of defendant;
4. no Long Branch ordinance makes the parking lot the responsibility of defendant;
5. there is no evidence that defendant had any notice of a dangerous condition prior to plaintiff's accident; and
6. there is no evidence that defendant ever inspected the municipal parking lot.
The foregoing comparison, of the Monaco facts to the facts in the within matter, demonstrates why the Monaco court properly concluded that "[t]he fairness and justice of recognizing a duty in such circumstances are clear beyond cavil," and why this court must conclude that "[t]he fairness and justice of [not] recognizing a duty [under these] circumstances are clear beyond cavil." Id. at 419, 840 A.2d at 834.
In Warrington v. Bird, 204 N.J.Super. 611, 499 A.2d 1026 (App.Div.1985), certif. denied, 103 N.J. 473, 511 A.2d 653 (1986), a patron of a restaurant was struck by a vehicle while crossing a county road which passed between the restaurant and its parking lot. The court, in holding that the restaurant operator had a duty to its customers to provide a reasonably safe means of ingress and egress across the county road, even though the condition was not on defendant's property, stated:
We agree that the critical element should not be the question of the proprietor's control over the area to be traversed but rather the expectation of the invitee that safe passage will be afforded from the parking facility to the establishment to which they are invited. Commercial entrepreneurs know in providing the parking facility that their customers will travel a definite route to reach their premises. The benefiting proprietor should not be permitted to cause or ignore an unsafe condition in that route which it might reasonably remedy, whether the path leads along a sidewalk or across a roadway.
[Id. at 617, 499 A.2d at 1029-30 (emphasis added).]
Based upon the facts of the within matter, it would be unreasonable for plaintiff to expect defendant to keep an entire municipal parking lot free of ice. This expectation becomes more unreasonable in view of the fact that defendant provided approximately twenty-five parking spaces on its own property for customers of its strip mall. Plaintiff, in choosing to park in the municipal lot, instead of on the landlord's premises, cannot now claim to possess a reasonable expectation that the landlord would afford him safe passage from any point in the municipal lot.
In Warrington, there was a definite route, from defendant's parking lot, that patrons used to reach defendant's premises; in the instant matter there are numerous routes that invitees could take, from the municipal lot, to reach defendant's premises. Plaintiff slipped on black ice between two parked cars. Because plaintiff could park anywhere in the municipal *1250 lot, and therefore take a different path through the lot on each visit, defendant landowner, in order to provide a reasonably safe means of ingress and egress, would be responsible for shoveling, sanding and salting the entire municipal lot. This is not a "reasonable remedy" for this one "benefiting proprietor" in relation to the "unsafe condition". Ibid. Because the municipal parking lot serves an almost undeterminable number of other businesses and establishments that surround the lot, in fairness, many "benefiting proprietor(s)" would have to somehow equitably prorate the responsibility for sanding and plowing the lot. To hold one of many "benefiting proprietor(s)" responsible for the condition of the entire lot, which serves several commercial property owners, would offend notions of fairness.
In MacGrath v. Levin Props., 256 N.J.Super. 247, 254, 606 A.2d 1108, 1112 (App.Div.), Certif. denied, 130 N.J. 19, 611 A.2d 656 (1992), (emphasis added; footnote omitted), the court, in holding that a shopping center owner had no duty of care to a patron struck by a vehicle while crossing a state-owned road, stated:

Warrington is distinguishable. As we stated in Ross [v. Moore], 221 N.J.Super. [1,] 7, 533 A.2d 398[, 401 (App.Div. 1987)], "Warrington is a precedent only that a commercial establishment which provides parking facilities for its patrons across a public roadway has a duty to exercise reasonable care for their safe passage from there to the commercial establishment and back." Here it is undisputed that Levin did not own or provide a parking facility across Route 22 for its shopping center patrons. Patrons have direct access to the shopping center by way of several vehicular entrances and by sidewalks located on the overpass connecting Park Avenue with Bonnie Burn Road. The fact that Levin may have known that shopping center patrons traversed Route 22 at the controlled pedestrian walkway does not, in our view, present a basis to extend the law by imposing a duty upon it to provide a means of safe passage across the highway, or to warn patrons of the apparent dangers of highway traffic.
Similarly, in the within case, defendant Primavera does not provide "parking facilities for its patrons across a public roadway". Ibid. In Warrington, restaurant patrons parked in defendant's parking lot across the street and then proceeded across a county road in order to gain access to defendant's restaurant. However, in Warrington, there was no evidence that defendant provided any alternative parking, such as defendant Primavera provided, adjacent to defendant's premises. Here the City of Long Branch provided a parking lot for people frequenting its city. Although defendant Primavera had knowledge that invitees would sometimes exercise this option of alternate parking in the adjacent municipal parking lot, "The fact that [defendant] may have known that shopping center patrons traversed [the municipal lot] does not in [my] view, present a basis to extend the law by imposing a duty upon it to provide a means of safe passage...." Ibid.
In Chimiente v. Adam Corp., 221 N.J.Super. 580, 583-84, 535 A.2d 528, 530 (App.Div.1987), the court, in holding that the owners, of a shopping center parking lot, had no duty to maintain a dirt pathway leading to the parking lot across property owned by the state, stated:
In our view the extension of liability under Stewart is clearly limited to abutting "sidewalks," and does not impose a duty upon commercial landowners to maintain contiguous lands owned by others simply because the public chooses to use the lands as a means of *1251 access to the commercial property. A sidewalk is defined as "[t]hat part of a public street or highway designed for the use of pedestrians, being exclusively reserved for them..." Black's Law Dictionary 1238 (5th ed. 1979) (emphasis supplied); see also Davis v. Pecorino, 69 N.J. 1, 5, 350 A.2d 51[, 53] (1975).
This court cannot impose "a duty upon commercial landowners to maintain contiguous lands owned by others simply because the public chooses to use the lands as a means of access to the commercial property". Id. at 583, 535 A.2d at 530. Plaintiff, herein, had the option to park in defendant's parking lot, and from there proceed to defendant's strip mall. The court, in Chimiente, makes clear that liability will flow from a "public street or highway designed for the use of pedestrians, being exclusively reserved for them..." Ibid. A municipal parking lot is not reserved exclusively for the use of pedestrians; it is more akin to the path in Chimiente, than the road in Warrington. In addition, the Chimiente court distinguished Warrington "since here [Chimiente] defendants provided safe passage to their parking lot through existing entrances from Throckmorton Lane and Route 9. It was reasonable for defendants to expect that their invitees would use these `definite route[s],' designed for that purpose, to reach the shopping center." Id. at 585, 535 A.2d at 531. As in Chimiente, defendant Primavera's shopping center had its own parking lot and it "was reasonable to expect that their invitees would use these definite routes". Ibid. This court finds that it would be unreasonable to require defendant to make safe the infinite possible paths from the municipal parking lot to defendant's premises.
Mulraney v. Auletto's Catering, Nat'l Valet Parking Servs., 293 N.J.Super. 315, 680 A.2d 793 (App.Div.), certif. denied, 147 N.J. 263, 686 A.2d 764 (1996), was a wrongful death action instituted, against a caterer and two parking service companies, by the husband of an invitee who, after attending a bridal fair, was killed while crossing the highway, on her way to her car. On defendants' motions for summary judgment, the court ruled that there were material issues of fact as to whether the caterer owed a duty to undertake reasonable safeguards to protect its invitees from dangers posed by a highway, which the proprietor knew its customers would cross to attend the bridal fair. In Mulraney a police officer testified:
[T]hat he had expressed concern to Auletto's about "the safety of the people [who parked] across the street and [had to cross] the road." Moylan [the officer] also indicated that the police department had suggested to Auletto's that it purchase signs to place on the side of the county highway in order to warn motorists to "slow down or become more alert" as they approached the area where pedestrians might be crossing. Auletto's accepted this suggestion and purchased the signs, which were subsequently used on some occasions. However, on the night the decedent was killed, Auletto's did not hire special duty officers or take any other steps to protect persons who parked on the opposite side of the highway to attend the Bridal Fair.
[Id. at 318-19, 680 A.2d at 794-95.]
In Mulraney, the landlord knew of the danger and had taken steps in the past to remedy the condition that posed a threat. In the within matter, the record is devoid of any facts that would indicate that the landlord, Primavera, had any notice of a dangerous condition. Furthermore, the Mulraney court noted that, "Plaintiff's claim against Auletto's is not based upon an alleged unsafe condition of the highway *1252 but rather upon a transient dangerous condition resulting from Auletto's conduct of a special function at its premises." Id. at 323, 680 A.2d at 797. In the instant matter the transient condition (black ice) did not result from defendant's conduct "at its premises"; it was the result of weather conditions occurring off defendant's premises. Ibid.
This court is not unmindful of our Supreme Court's observation, over twenty years ago, that "[t]he historical classifications of the degrees of care owing to visitors upon land are undergoing gradual change in the law in favor of a broadening application of a general tort obligation to exercise reasonable care against foreseeable harm to others." Butler v. Acme Mkts., Inc., 89 N.J. 270, 277, 445 A.2d 1141, 1144 (1982) (emphasis added). However, eleven years later, this same Court cautioned that this "broadening application" must be guided by the principle that:
Whether a person owes a duty of reasonable care toward another turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy. Goldberg [v. Housing Auth.,] 38 N.J. [578,] 583, 186 A.2d 291 [, 293 (1962)]. That inquiry involves identifying, weighing and balancing several factors the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution. Ibid. The analysis is both very fact-specific and principled; it must lead to solutions that properly and fairly resolve the specific case and generate intelligible and sensible rules to govern future conduct. [Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439, 625 A.2d 1110, 1116 (1993).]
In "weighing and balancing" the various factors revealed by the facts of the within matter, in order to "fairly resolve [this] specific case and generate intelligible and sensible rules to govern future conduct", this court holds that a commercial property owner does not have a duty to alleviate the danger of black ice in an entire adjoining municipal parking lot that serves many surrounding businesses and establishments. Ibid. Although a landlord owes the highest duty of care to its invitees, this duty does not extend to an icy patch that is not under the control or ownership of the landlord. Although Monaco makes clear that ownership and control are not dispositive, in deciding whether a duty exists, they are factors to be considered in imposing a duty that would "satisfy an abiding sense of basic fairness". Ibid. Here the icy condition was a transitory one that, in order to be properly remedied, would require the adjoining commercial property owner to conduct daily inspections of a parking lot that he did not own or control. Even if such an inspection revealed an icy condition, it is not clear that the property owner would have the right to remedy this situation by hiring someone to plow and sand a parking lot which is owned and controlled by the municipality.
Because defendant Primavera provided a safe alternative means of ingress and egress to its invitees, "[f]airness would require that in (these) circumstances a commercial landowner should be free of legal responsibility, such as when a defective condition is far removed from that party's control." Monaco v. Hartz Mountain Corp., supra, 178 N.J. at 421, 840 A.2d at 835 (Verniero J., concurring). For the foregoing reasons defendant Rudolph F. Primavera Realty Corp.'s motion for summary judgment is granted.
NOTES
[1] At oral argument this court granted the crossmotion for summary judgment of defendant City of Long Branch based upon its immunity for snow-removal activities of public entities, even though there was no snow on the ground because "[s]alting and sanding fall under the umbrella of snow removal activities. These alleged failures to remediate cannot be sufficiently distinguished from snow removal to escape the application of snow removal immunity." Farias v. Tp. of Westfield, 297 N.J.Super. 395, 402, 688 A.2d 151, 155 (App.Div.1997). See also Rochinsky v. State, Dep't of Transp., 110 N.J. 399, 541 A.2d 1029 (1988); N.J.S.A. 59:4-7.