931 A.2d 614

DIANE BRIERLEY, AS ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF CHARLES BRIERLEY, DECEASED, AND AS GUARDIAN OF KRISTEN BRIERLEY AND JENNIFER BRIERLEY, DEPENDENT CHILDREN OF THE DECEASED, AND DIANE BRIERLEY, INDIVIDUALLY, PLAINTIFF–APPELLANT v. DAVID S. RODE, HUNTLEY TAVERN, AND STATE FARM INSURANCE COMPANY, DEFENDANTS, AND THE NEW SUMMIT CAR WASH, INC., DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 18, 2007—Decided September 27, 2007.

Before Judges COBURN, FUENTES and GRALL.

*John C. Emolo,* argued the cause for appellant (*Emolo & Collini,* attorneys; *Mr. Emolo,* on the brief).

*G. Christopher Bally,* argued the cause for respondent (*Edward P. Papalia, Jr.,* attorney; *Mr. Bally,* on the brief).

The opinion of the court was delivered by

COBURN, P.J.A.D.

This wrongful death action arose when plaintiff's decedent, Charles Brierley, was struck at night by a car as he was walking across a county road from Huntley Tavern, where he had just finished eating and drinking, to The New Summit Car Wash, Inc. ("New Summit"), where he had parked his car. Plaintiff settled with the driver for $250,000 and with Huntley Tavern for $875,000. New Summit obtained summary judgment, and plaintiff appeals.

New Summit and Huntley Tavern had agreed that cars belonging to the tavern's customers could be parked in New Summit's parking lot. Originally, the understanding was that the parking would be done by the tavern's valets, but New Summit became aware before the accident that the tavern's customers were self-parking in New Summit's lot with Huntley Tavern's approval.

Plaintiff contends that we should expand the following principle to establish a duty on New Summit's part that would allow recovery in these circumstances if New Summit was negligent: when a business on one side of a public road provides parking on the other side of the road for its customers, it must use reasonable care to protect them while crossing the road, whether or not it owns or controls the parking lot. *Warrington v. Bird,* 204 *N.J.Super.* 611, 617–18, 499 *A.*2d 1026 (App.Div.1985), *certif. denied,* 103 *N.J.* 473, 511 *A.*2d 653 (1986); *Mulraney v. Auletto's*

*Catering,* 293 *N.J.Super.* 315, 319–22, 680 *A.*2d 793 (App.Div.), *certif. denied,* 147 *N.J.* 263, 686 *A.*2d 764 (1996). In other words, plaintiff argues that when a business permits the customers of another business to use its parking lot, and the businesses are on opposite sides of a public road, the parking lot owner has a duty to the other business's customers to make passage over the road reasonably safe. We reject plaintiff's argument as unsupported by considerations of public policy or fairness and therefore affirm.

I

Huntley Tavern is a restaurant and tavern located in Summit on the corner of Springfield Avenue and Morris Avenue, a county road. New Summit, a commercial carwash, is on the other side of Morris Avenue. In the 1980's Huntley Tavern, then under different ownership and known as Uncle Mike's Tavern, obtained permission from the municipal planning board to use ten spaces on New Summit's lot for customer parking. Although the planning board's resolution did not require valet parking for those spaces, the tavern's witnesses represented to the board that the area would be used exclusively by its valets. A representative from New Summit, which operates a carwash on its property, was present at the hearing when those representations were made.

Under the original agreement, New Summit received $500 per month from Uncle Mike's for leasing the ten parking spaces, which could be used only after 6:00 p.m., by which time the carwash would always be closed. Around 2000, the agreement was changed in this respect: instead of receiving money for the parking spaces, New Summit was given the right to use Huntley Tavern's parking lot for New Summit's customers during its business hours. Sometime before the accident, Huntley Tavern put a sign on its premises advising customers that they could self-park in the New Summit parking lot across the road. With one exception, neither Huntley Tavern nor New Summit took any action to make the crossing between them safer; the exception

was that Huntley Tavern provided valet service for its customers during the evenings from Thursday through Saturday.

The accident occurred on August 22, 2002, which was a Thursday. Although Huntley Tavern's parking valets were available when Brierley arrived that night, he parked his car himself on the New Summit lot, and crossed Morris Avenue to have dinner at Huntley's Tavern. As usual, the carwash was closed. Around 10:30 p.m., Brierly, left Huntley Tavern and began walking across Morris Avenue to re-enter his car. Before he reached the other side of the road, a car struck him causing severe injuries resulting in his death.

## II

In *Warrington, supra,* the defendant restaurant provided parking for its customers in one of its parking lots on the other side of a public road, and plaintiff was killed while crossing back to the parking lot after having dinner at defendant's restaurant. We held that

> when a business provides a parking lot across the roadway from its establishment, the duty of the proprietor to exercise reasonable care for the safety of its patrons extends to conditions obtaining at the parking lot and requires that the patrons not be subjected to an unreasonable risk of harm in traversing the expected route between the two locations.
>
> [204 *N.J.Super.* at 617, 499 *A.*2d 1026.]

In the course of that opinion, we noted evidence that the proprietor could have employed lighting and signs addressed to drivers and its customers to make the crossing safer. *Ibid.* And we observed that "the critical element ... [was] the expectation of the invitee[s] that safe passage will be afforded from the parking facility to the establishment to which they are invited." *Ibid.*

*Mulraney, supra,* involved a plaintiff who was struck by a car while walking back across a road from a catering facility, where she had been an invited guest, to a parking lot that the caterer knew was being used by its customers. *Mulraney* differed from Warrington in one respect: the parking lot across the road was neither owned nor controlled by the defendant. Nonetheless, we

held that the caterer had a duty to its customers to render the crossing reasonably safe. *Mulraney, supra,* 293 *N.J.Super.* at 323–24, 680 *A.*2d 793.

In finding a duty in *Mulraney,* we followed the approach required by *Hopkins v. Fox & Lazo Realtors,* 132 *N.J.* 426, 439, 625 *A.*2d 1110 (1993), taking into account "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." We were also guided by the Supreme Court's declaration that the determination of whether a party owes a duty of care is "very fact-specific." *Ibid.* We applied the factors in this manner:

> The factors identified in *Hopkins* point to the conclusion that a business proprietor has a duty, at least under some circumstances, to undertake reasonable safeguards to protect its customers from the dangers posed by crossing an adjoining highway to an area the proprietor knows or should know its customers will use for parking. First, the relationship between a business enterprise and persons invited to its premises to further its commercial interests has traditionally required the exercise of "a higher degree of care" than is owed to other persons. *Hopkins v. Fox & Lazo Realtors, supra,* 132 *N.J.* at 433, 625 *A.*2d 1110. Second, a pedestrian who has to cross a highway at night in an area that is not marked for pedestrian traffic faces a substantial risk of being struck by a passing motorist. Third, a substantial commercial enterprise that owns property immediately adjoining a highway has the ability to illuminate an area where pedestrians are likely to cross and/or to provide warnings of the danger both to motorists and to pedestrians and, if necessary, to hire off duty police officers to control motor vehicular and pedestrian traffic. *See Warrington v. Bird, supra,* 204 *N.J.Super.* at 617, 499 *A.*2d 1026. Fourth, we are satisfied that it is fair and just to impose a duty of care upon a business enterprise, such as Auletto's, to provide safe passage for customers it knows or has reason to know may park on the opposite side of an adjoining highway, at least where a dangerous condition arises only on those isolated occasions when the business conducts special functions that attract an unusually large number of attendees.
>
> [*Mulraney, supra,* 293 *N.J.Super.* at 321–22, 680 *A.*2d 793.]

After completing that analysis, we distinguished *MacGrath v. Levin Properties,* 256 *N.J.Super.* 247, 606 *A.*2d 1108 (App.Div.), *certif. denied,* 130 *N.J.* 19, 611 *A.*2d 656 (1992), in which a shopping center that did not provide parking for its customers on the other side of an adjoining highway was held to have no duty to provide its customers with safe passage over the highway.

Under *MacGrath*, New Summit would clearly have no duty to make passage over the road safer for its own customers who crossed the road for reasons unrelated to the services it provided. The question is whether it should nonetheless have such a duty to customers of Huntley Tavern simply because it allowed them to use its parking lot. We think not for the following reasons.

The critical relationship giving rise to the duty is the existing relationship between Huntley Tavern and its customers. Huntley Tavern chose the parking method and it was best positioned to assess the hazards it had created for its customers and to select the measure or combination of measures, such as lights, signs, valet service, or security guards that would best alleviate those hazards. New Summit, on the other hand, was closed when Huntley Tavern's customers used its parking lot and was therefore far less able to assess or ameliorate the specific hazards created by Huntley Tavern's business operation. Therefore, we perceive no sound basis for expanding the duty established by *Warrington* and *Mulraney* to hold New Summit liable in these circumstances.

Of course we do not mean to suggest that New Summit had no duty to the customers of Huntley Tavern. Those customers were obviously business invitees of New Summit respecting their use of the parking lot. Consequently, New Summit was responsible to them for maintaining its parking lot in a reasonably safe condition, *Butler v. Acme Markets, Inc.*, 89 *N.J.* 270, 275, 445 *A.2d* 1141 (1982), and for providing a reasonably safe means of exit and entry, *Krug v. Wanner*, 28 *N.J.* 174, 179, 145 *A.2d* 612 (1958). But, apart from the exception created by *Warrington*, that responsibility does not extend to providing safe crossing over an abutting public highway, *MacGrath, supra*, 256 *N.J.Super.* at 250–252, 606 *A.2d* 1108, and we perceive no just reason for creating another exception to the general rules governing premises liability.

Affirmed.