817 A.2d 318 (2003)
358 N.J. Super. 74
Robert SANCHEZ, Robert E. Sanchez, a minor by his guardian ad litem, Julia Jackson, Plaintiffs-Appellants,
v.
INDEPENDENT BUS CO., INC., and Pierre A. Dorceus, Defendants-Respondents,
v.
SOUTH ORANGE BUS CO., and Kaawone Johnson, Defendants, and
The Independent Bus Co., Inc., and Pierre A. Dorceus, Defendants-Third-Party Plaintiffs,
v.
Karl Smith and Kaawone Johnson, Third-Party-Defendants.
Renee Smith, Plaintiff-Appellant,
v.
Independent Bus Co., Inc., Defendants-Respondents,
v.
South Orange Avenue Bus Co., Defendants, and
The Independent Bus Co., Defendant-Third Party-Plaintiff,
v.
Karl Smith, Kaawone Johnson, and Robert Sanchez, Third Party-Defendants.
Superior Court of New Jersey, Appellate Division.
Argued January 27, 2003.
Decided February 20, 2003.
*320 Albert E. Fershing, West Orange, argued the cause for appellants Robert Sanchez, Robert E. Sanchez, a minor by his guardian ad litem and Julia Jackson (Shurkin & Fershing, attorneys; Mr. Fershing, on the joint brief).
Bridget Saro, Montclair, argued the cause for appellant Renee Smith (Frank J. Zazzaro, attorney; Ms. Saro, on the joint brief).
John I. Lisowski, Jr., Livingston, argued the cause for respondents (Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, attorneys; Mr. Lisowski, of counsel and on the brief).
Before Judges PETRELLA, LINTNER and PARKER.
*319 The opinion of the court was delivered by PETRELLA, P.J.A.D.
After the dismissal on summary judgment motions of their complaints in these consolidated matters, plaintiffs Robert Sanchez and Renee Smith appeal the determination of the Law Division Judge that defendants Independent Bus Co. (Independent) and its driver, Pierre A. Dorceus, owed no duty to protect them against an armed passenger's actions, i.e., that of the third party defendant Kaawone Johnson.
On October 21, 1997, plaintiffs Robert Sanchez, his son, Robert E. Sanchez[1] and Renee Smith were passengers on board the # 31 Independent bus which was leased by defendant Independent, and traveling to Penn Station in Newark. Third party defendants Kaawone Johnson and Karl Smith were also passengers on that bus.
At approximately 9:32 a.m., a man, later identified as Kaawone Johnson, boarded the bus carrying a large radio.[2] Johnson sat in a seat toward the back of the bus. Sanchez was standing on the steps adjoining the rear door because there were no seats. Approximately one minute after boarding, Johnson turned his radio on at a loud volume.
Dorceus testified at his deposition that there is a large sign when you board the bus that states that passengers are not permitted to play their radios on the bus. The bus was equipped with a two-way radio, which was not working. If the two-way radio worked, the driver would call his dispatcher for help if there was a problem. When the bus stopped Dorceus asked Johnson to turn the radio off and Johnson complied. Plaintiffs argue that he only turned the volume down. The video tape does not support that argument. In any event, for purposes of this opinion any discrepancy is irrelevant.
*321 Approximately fifteen minutes later the buzzer for Johnson's stop sounded and he stood up and walked toward the rear exit doors of the bus. At that time he turned up the volume on his radio and waited for the bus to come to a stop. Sanchez asked Johnson to turn off his radio, and Johnson ignored him. Dorceus heard the radio come back on, but did not again request that Johnson turn it off.
While waiting, Johnson stepped on the foot of another passenger Karl Smith.[3] Smith asked Johnson to apologize for stepping on his foot. Johnson refused to apologize to Smith and they exchanged words. Smith challenged Johnson to a fight, which Johnson accepted. Smith got off the bus and was followed by Johnson. As Johnson was descending the stairs, Smith punched him and, while grabbing Sanchez's clothing, Johnson got back onto the bus. Smith pursued Johnson into the rear of the bus where a physical confrontation occurred. During the confrontation, Johnson pulled out a concealed handgun that he was carrying and shot it multiple times. One of the bullets hit Sanchez.
When Dorceus heard the shots, he ran off the bus, followed by the passengers. Plaintiff, Renee Smith, was injured by fellow passengers as they fled from the bus. Sanchez was rendered a paraplegic from his bullet wounds.

I.
In assessing a motion for summary judgment, the trial judge determines if genuine issues of material fact exist. If none exist the judge determines if the moving party is entitled to judgment as a matter of law. Brill v. Guardian Life Ins. Co., 142 N.J. 520, 540, 666 A.2d 146 (1995). Our review on appeal applies the same analysis. Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App.Div.1998).
However, the determination of whether a party has a duty of care, and the scope of such a duty, are questions of law that must be decided by the court. Clohesy v. Food Circus Supermarkets, Inc., 149 N.J. 496, 502, 694 A.2d 1017 (1997). The key to the legal determination that a duty exists is based upon the foreseeability of the risk, the seriousness of the risk, and the "practicality of preventing it." J.S. v. R.T.H., 155 N.J. 330, 339, 714 A.2d 924 (1998). When a plaintiff seeks to impose a duty on a defendant to control the acts of a third party, the plaintiff "may be required to prove that defendant was in a position to `know or have reason to know, from past experience, that there [was] a likelihood of conduct on the part of [a] third person' that was `likely to endanger the safety' of another." Id. at 338, 714 A.2d 924 (quoting Clohesy, supra, 149 N.J. at 507, 694 A.2d 1017). Even if the risk is foreseeable, a legal duty does not necessarily arise. Ivins v. Town Tavern, 335 N.J.Super. 188, 195, 762 A.2d 232 (App.Div.2000). See Lombardo v. Hoag, 269 N.J.Super. 36, 52-53, 634 A.2d 550 (App.Div.1993), certif. denied, 135 N.J. 469, 640 A.2d 850 (1994); McIntosh v. Milano, 168 N.J.Super. 466, 483, 403 A.2d 500 (Law Div.1979).
Determining the existence of a duty of care involves identifying, weighing, and balancing several factors, including the relationship of the parties, the nature of the risk, the opportunity and ability to exercise care, and the public interest in the proposed solution. Alloway v. Bradlees, *322 Inc., 157 N.J. 221, 723 A.2d 960 (1999). The analysis is fact-specific and principled; it must lead to solutions that properly and fairly resolve the specific case and generate intelligible and sensible rules to govern future conduct. Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 434, 625 A.2d 1110 (1993) (citation omitted). These factors are considered under the totality of the circumstances. Clohesy, supra (149 N.J. at 508, 694 A.2d 1017). Reasonableness, public policy, fairness and common sense also must be taken into account when imposing new legal duties. Williamson v. Waldman, 150 N.J. 232, 245-246, 696 A.2d 14 (1997).
As a common carrier, Independent would owe a high degree of care for the safety of its passengers so as to avoid dangers that are known or reasonably anticipated. See Lieberman v. Port Authority of New York and New Jersey, 132 N.J. 76, 85, 622 A.2d 1295 (1993) (citations omitted). By accepting passengers entrusted to their care the carrier undertakes to use great care consistent with the nature of the undertaking. Harpell v. Public Service Coordinated Transport, 20 N.J. 309, 316-317, 120 A.2d 43 (1956). See also, Prosser, Law of Torts, (2d ed. 1955) at 119, 147, 188. The issue becomes whether the wrongful act of the third person could have been reasonably anticipated. Id. at 316, 120 A.2d 43. (citations omitted).
Where a third party caused injuries to its passengers a duty has been imposed on a common carrier where the harm caused by the third party, an intoxicated passenger, was reasonably foreseeable and the carrier was aware of the intoxicated passenger's condition. Thus, in Falzarano v. Delaware, L. & W.R. Co., 119 N.J.L. 76, 194 A. 75 (E & A 1937), a judgment against the railway company was affirmed where a railway passenger was shot by a drunken passenger. There, the assailant demanded his watch from a passenger and when the passenger told him he did not have it and to go away, the assailant shot at this passenger. The bullet struck the plaintiff, who had no prior contact with the assailant. Id. at 80-81, 194 A. 75. The railway company contended that because only about four minutes intervened between the time the assailant got on the train and the time of the shooting, the train crew did not have sufficient time to know he was likely to commit an assault and to prevent him from doing so. Id. at 81, 194 A. 75. The court rejected this contention, and emphasized that the uncontradicted evidence was that for the entire time period the assailant was cursing, threatening, and assaulting passengers, the ticket collector and two other railway employees were in a position to see what was going on and to prevent it, and yet none of them said or did anything to prevent the assailant's behavior. Id. at 82-83, 194 A. 75. The conductor had even testified that prior to the shooting the assailant's conduct made him afraid of a holdup and that he walked away from the assailant and went to tell the engineer about it. Id. at 80, 194 A. 75.
In contrast, there is no basis to conclude that the bus driver should have anticipated the events that actually occurred. Thus, Falzarano is distinguishable. Johnson appeared to comply with the drivers first request to lower his radio, and did not at that time act in a threatening manner towards any of the passengers. The events leading up to the shooting occurred within a time frame of about thirty seconds. Moreover, the bus driver was unable to see everything that was going on in the rear of the bus or prevent it.
Plaintiffs rely on Ventresco v. Gokvlesh Convenience, Inc., 318 N.J.Super. 473, 723 A.2d 1250 (App.Div.1999), where customers who were criminally assaulted outside *323 a convenience store sued the store for negligence, alleging that a store employee stood by while the assault occurred and delayed calling the police. Id. at 475-476, 723 A.2d 1250. In reversing summary judgment for defendant and remanding, we held that a genuine issue of material fact existed as to whether the store employee's actions were adequate under the totality of circumstances to meet a duty to provide safe commercial premises. Id. at 479, 723 A.2d 1250. Specifically, the store employee knew plaintiffs' assailants, observed an encounter in the store, saw that the assault was about to occur, and stood by while it actually did occur. Id. at 478-479, 723 A.2d 1250. Ventresco does not warrant reversal here. That case is distinguishable because defendant there had sufficient information to know of the existence of a danger and enough time to act on behalf of the patron's safety.
Plaintiffs also rely on Mulraney v. Auletto's Catering, 293 N.J.Super. 315, 321-322, 680 A.2d 793 (App.Div.), certif. denied, 147 N.J. 263, 686 A.2d 764 (1996), where a catering facility was held responsible for failing to take adequate precautionary measures to protect a patron who was killed by a passing vehicle as she crossed the highway to return to her car. Plaintiff had parked in a lot across the roadway which was commonly used when the caterer's valet parking service was at capacity. Id. at 318, 680 A.2d 793. In the past, the business proprietor had hired special duty officers and posted signs to protect customers who used the lot, but did not do so on this occasion. Id. at 322, 680 A.2d 793. We imposed a duty on the establishment to undertake "measures to protect its customers from a transient dangerous condition created by [its] own business operation, specifically, the conduct of a large function which it knew or should have known would involve some patrons parking on the opposite side of a poorly illuminated county highway that had no crossing for pedestrians." Id. at 323, 680 A.2d 793. The holding in Mulraney is inapplicable to the case at bar as the dangerous condition in Mulraney which led to plaintiff's injury was created by the defendant. Here, Independent had nothing to do with creating the danger which brought about the injuries to either plaintiff.
The motion judge properly determined that defendants did not breach any duty owed to the plaintiffs. The judge aptly noted that the duty plaintiffs seek to impose on defendants is not one of simply having a high duty, but that of a guarantor of its passenger's safety regardless of scienter or notice. The judge noted the brevity and the location of the events in the rear of the bus. There was nothing defendants could have reasonably done to prevent this incident. Although plaintiffs contend that bus companies can have security guards on all buses, imposing this requirement upon all bus companies would neither be reasonable nor fair. To impose such an extreme duty of care upon a carrier in this situation would treat a public carrier specially for all purposes rather than for those risks associated with the conduct of the business. Defendants were unaware that Johnson was armed and had no reason to know of Johnson's violent predispositions. Under the totality of the circumstances, the judge properly granted summary judgment in favor of defendants.

II.
Foreseeability that relates to proximate cause involves "`the question of whether the specific act or omission of the defendant was such that the ultimate injury to the plaintiff' reasonably flowed from the defendant's breach of duty." Clohesy, supra (149 N.J. at 503, 694 A.2d 1017) (quoting Hill v. Yaskin, 75 N.J. 139, 143, *324 380 A.2d 1107 (1977)). Foreseeability in the proximate cause context relates to remoteness rather than the existence of a duty. Clohesy, supra (149 N.J. at 503, 694 A.2d 1017). While a proximate cause need not be the sole cause of harm, it must be a substantial contributing factor to the harm suffered. Johnson v. Schragger, Lavine, Nagy & Krasny, 340 N.J.Super. 84, 773 A.2d 1164 (App.Div.2001). The issue of a defendant's liability is not entitled to be presented to a jury simply because there is some evidence of negligence; there must be evidence or reasonable inferences therefrom showing a proximate causal relationship between defendant's negligence, if found by the jury, and the resulting injury. Reynolds v. Gonzalez, 172 N.J. 266, 798 A.2d 67 (2002).
Here, even if there was a duty of care owed by the bus company to protect against a passenger who boarded the bus with a concealed weapon, it cannot reasonably be said that any acts or omissions of the defendants were a proximate cause of the shooting. The record does not indicate that defendants had any reason to know or foresee that Johnson would harm any of the passengers. There is simply nothing within reason defendants could have done to prevent the shooting under these circumstances. Thus, even if defendants did owe a duty to plaintiffs, they did not demonstrate that any actions or inactions of the defendants were a proximate cause of plaintiffs' injuries.
Affirmed.
NOTES
[1] Robert E. Sanchez asserted a claim for emotional distress as a result of observing his father's injuries.
[2] Video cameras, with audio, were in operation during the bus trip and the tape showed various views of the bus interior. Johnson is identified as the black male on the bus wearing a jacket bearing the letters USA on the back and holding a "boom-box."
[3] On the videotape, Karl Smith is the passenger standing near the rear bus doors wearing a trench coat.