NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3737-17T2

ANASIA MAISON,

        Plaintiff-Respondent,

v.

NJ TRANSIT CORPORATION
and KELVIN COATS,

        Defendants-Appellants.

_____

> **APPROVED FOR PUBLICATION**
>
> **July 17, 2019**
>
> **APPELLATE DIVISION**

Argued April 2, 2019 – Decided July 17, 2019

Before Judges Fisher, Hoffman and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-3535-14.

Robert J. Mc Guire, Deputy Attorney General, argued the cause for appellants (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Robert J. Mc Guire, on the briefs).

Kingsuk Bhattacharya argued the cause for respondent (Bendit Weinstock, PA, attorneys; Kingsuk Bhattacharya and Sherri Davis Fowler, on the briefs).

David M. Schmid argued the cause for amicus curiae New Jersey Association for Justice (Stark & Stark PC, attorneys; David M. Schmid and Evan J. Lide, of counsel and on the brief).

The opinion of the court was delivered by

HOFFMAN, J.A.D.

Plaintiff Anasia Maison filed this action against defendants, New Jersey Transit (NJ Transit) and one of its bus drivers, seeking damages for the injuries she sustained when an unidentified bus passenger struck plaintiff in the head with a thrown glass bottle. At the conclusion of a two-day trial, a jury returned a verdict in favor of plaintiff and awarded her $1.8 million in damages. After the trial court denied defendants' motion for judgment notwithstanding the verdict, new trial, or remittitur, they filed this appeal. We affirm in part and vacate and remand in part.

I.

We derive the following facts from the record. On July 22, 2013, plaintiff boarded a NJ Transit bus in Newark around 1:15 a.m. According to plaintiff, she sat near the back of the bus and a group of male teenagers sat behind her. The group began making profane comments to plaintiff and one of them threw an object at her. Plaintiff defended herself by speaking back to the teenagers. When a second object was thrown at her, and one of the teenagers brandished a knife, plaintiff changed seats.

The encounter continued for approximately seven to eight minutes. The bus driver, defendant Kelvin Coats, witnessed the entire incident, and described plaintiff as

> handling herself very well . . . . She wasn't afraid. She didn't back down. She stood up for herself . . . . And then it just died down. So I didn't feel as though there was a need for me to go back and intervene because she shut them up.

Coats also stated that if plaintiff had asked for help, he "would have reacted, stopped the bus. I would have intervened." Further, if he had noticed one of the men brandish a knife, he would have "call[ed] the police immediately." He had called them before, but had never seen a physical altercation on his bus, and did not expect one would happen that night. Aside from calling the police, Coats acknowledged he could have asked the unruly passengers to leave, or called NJ Transit's driver hotline (NJT Hotline), or stopped the bus.

As the teenagers exited the bus at their stop, one of them turned and threw a liquor bottle at plaintiff, striking her in the forehead. Coats "heard the glass break" and heard plaintiff scream. He went back to plaintiff's seat and observed plaintiff bleeding profusely, and saw the broken bottle on the floor. An ambulance transported plaintiff to the hospital, where she required twenty-two stitches to close her wound.

After plaintiff filed suit in 2014, defendants successfully moved for dismissal, arguing plaintiff's claims, as set forth in her complaint, were barred by the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3, specifically, under the police protection immunity provided by N.J.S.A. 59:5-4. Plaintiff then filed an amended complaint, alleging NJ Transit is a common carrier, and enumerating various actions that Coats could have taken to fulfill defendants' duty to keep passengers on the bus safe from harm. The amended complaint omitted any claim that defendants failed to provide physical security, in obvious recognition that the police protection immunity barred such a claim. Plaintiff's amended complaint alleged that "other passengers on the same bus . . . became increasingly and significantly unruly with plaintiff for a significant amount of time and . . . then caused significant and permanent injuries by throwing a glass object at her face." Plaintiff's amended complaint did not assert any claim against the unidentified teenager who threw the bottle at plaintiff or the other individuals in his group.

While defendants did not include the bottle thrower or any of the "unruly" passengers as John Doe third-party defendants, defendants' answer did include the following separate defenses, relevant to this appeal:

SEVENTH AFFIRMATIVE DEFENSE

The Complaint and the proceedings resulting therefrom and any recovery resulting therefrom is

4

barred, limited and/or controlled by all provisions of the [TCA], inclusive, as if each section, provision, defense, and immunity were listed herein separately, particularly, and at length.

. . . .

FIFTEENTH AFFIRMATIVE DEFENSE

The injuries were due to the acts or omissions of third persons over whom this defendant had no control.

Before trial began, defendants sought the following determinations from the trial court: (1) a finding that defendants did not owe the duties of a "common carrier"; (2) the dismissal of plaintiff's case based on the absence of supporting expert testimony; and (3) a ruling that the bottle-throwing tortfeasor would appear on the verdict sheet. The trial court denied each application.

At the conclusion of the evidence, defendants moved for a directed verdict, citing TCA immunity provisions based on failure to provide police protection, N.J.S.A. 59:5-4, and good faith execution of the law, N.J.S.A. 59:3-3. The trial court denied the motion and submitted the matter to the jury. After finding that defendants "fail[ed] to exercise a high degree of care in protecting plaintiff," and that "this failure proximately cause[d] plaintiff's injuries," the jury awarded plaintiff $1.8 million in damages. After the trial court denied defendants' post-trial motions, they filed this appeal.

A-3737-17T2

On appeal, defendants raise five arguments, asserting the trial court erred by: (A) allowing plaintiff to proceed to trial without supporting expert testimony regarding defendants' duty of care; (B) holding the common carrier standard applicable to NJ Transit buses and drivers; (C) failing to grant judgment for defendants on the issue of proximate cause; (D) rejecting defendants' claim that TCA immunities applied; and (E) rejecting defendants' request to include the bottle thrower on the verdict sheet. We address these arguments in turn.

## II.

### A. Expert Testimony

Defendants argue the trial court erred when it denied their motion to dismiss plaintiff's claims for failing to provide "any expert report or testimony regarding the standard of care owed by defendants." A plaintiff need not always present expert testimony to assess whether a particular defendant acted negligently. Jacobs v. Jersey Cent. Power & Light Co., 452 N.J. Super. 494, 505 (App. Div. 2017). The necessity of expert testimony is determined by the sound exercise of discretion by the trial judge. State v. Summers, 350 N.J. Super. 353, 364 (App. Div. 2002), aff'd, 176 N.J. 306 (2003). We examine the decision for abuse of discretion. Estate of Hanges v. Metro. Prop. & Cas. Ins.

Co., 202 N.J. 369, 382 (2010) (quoting Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008)).

Expert testimony is not required when the jury can understand the concepts in a case "utilizing common judgment and experience." Campbell v. Hastings, 348 N.J. Super. 264, 270 (App. Div. 2002). See also Mayer v. Once Upon A Rose, Inc., 429 N.J. Super. 365, 376-77 (App. Div. 2013) (holding that a liability expert on glass was not needed to opine about glass shattering if held too tightly).

Expert testimony is required only when "the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the party was reasonable." Butler v. Acme Mkts., Inc., 89 N.J. 270, 283 (1982).

Butler considered whether a defendant grocery store breached a duty to protect patrons from criminal acts of third parties. Although the plaintiff did not present an expert, the Court did not find the omission dispositive, noting "there is no general rule or policy requiring expert testimony as to the standard of care." Id. at 275, 283. Although the Court noted expert opinion could have aided the jury, "its absence [was] not fatal." Id. at 283.

Conversely, we required a liability expert in Ford Motor Credit Co. v. Mendola, 427 N.J. Super. 226, 239 (App. Div. 2012). There, a lessee took her

car to a shop for inspection and repair, yet the car's engine seized less than two weeks after it was returned to the lessee. Id. at 233-34. The parties disputed the cause of the engine seizure. Ibid. We concluded expert testimony was required because an automobile is a "complex instrumentality," that has "increased in mechanical and electronic complexity," diminishing the general public's familiarity with its functioning. Id. at 236-37, 239.

This case does not involve a complex instrumentality such as a car. Rather, it closely resembles the factual circumstances presented in Butler. We conclude the matter presented was not so esoteric that jurors of common judgment and experience could not form a valid judgment as to whether defendants' conduct failed to satisfy the degree of care owed to plaintiff. Jurors without any advanced knowledge could have determined that Coats should have done something, rather than nothing. Thus, in light of the deference we grant the trial judge's determination, we find no error.

### B. The Common Carrier Standard

Defendants further argue NJ Transit should not have been held to the common carrier standard of negligence. Although we have not yet directly addressed this question, our case law has viewed bus lines generally, and public transit systems specifically, as common carriers for many years. See Lieberman v. Port Auth. of N.Y. & N.J., 132 N.J. 76 (1993) (noting in dicta

the Port Authority Trans-Hudson rapid rail system acts as a common carrier); Harpell v. Pub. Serv. Coordinated Transp., 20 N.J. 309 (1956) (determining a public trolley line was a common carrier); Schott v. Weiss, 92 N.J.L. 494 (E. & A. 1918) (holding public jitney bus was a common carrier); Model Jury Charges (Civil), 5.73, "Common Carriers for Hire" (June 1988).

As amicus points out, other states also consider their public transportation systems as common carriers. See Blackwell v. Fernandez, 59 N.E.2d 342 (Ill. App. Ct. 1945); Mangini v. SEPTA, 344 A.2d 621 (Pa. Super. Ct. 1975); White v. Metro. Gov't of Nashville & Davidson Cty., 860 S.W.2d 49 (Tenn. Ct. App. 1993). California, whose own Tort Claims Act formed the basis for New Jersey's, views public transportation systems as common carriers. See Lopez v. S. Cal. Rapid Transit Dist., 710 P.2d 907 (Cal. 1985). Thus, we find no error in the trial court applying the common carrier standard of care to defendants' conduct.

## C. Proximate Cause

Defendants also contend plaintiff failed to prove their actions or inactions proximately caused her injuries. Proximate cause involves "the question of whether the specific act or omission of the defendant was such that the ultimate injury to the plaintiff reasonably flowed from the defendant's

A-3737-17T2

breach of duty." Clohesy v. Food Circus Supermarkets, 149 N.J. 496, 503 (1997) (quoting Hill v. Yaskin, 75 N.J. 139, 143 (1977)).

"Proximate cause is a factual issue, to be resolved by the jury after appropriate instruction by the trial court." Scafidi v. Seiler, 119 N.J. 93, 101 (1990). We may only overturn a jury verdict if it "is so far contrary to the weight of the evidence as to give rise to the inescapable conclusion of mistake, passion, prejudice, or partiality." Wytupeck v. City of Camden, 25 N.J. 450, 466 (1957).

We discern no reversible error in the jury's decision. The record demonstrates that Coats witnessed plaintiff's entire encounter with the group of men. The record shows the teenagers made profane comments and threw multiple objects at plaintiff. One teenager even brandished a knife, causing plaintiff to move from her seat. Based on the record, it was not manifestly incorrect for the jury to determine that Coats' failure to take any action constituted a substantial factor in causing plaintiff's injuries.

Defendants cite Sanchez v. Independent Bus Co., 358 N.J. Super. 74 (App. Div. 2003) to demonstrate lack of proximate cause. In Sanchez, the plaintiff boarded a bus to Newark. Id. at 78. Another passenger, Johnson, entered the bus carrying a large radio, which he turned to a loud volume. Ibid. At the driver's request, Johnson turned down the volume. Id. at 79. When

10                                                                              A-3737-17T2

Johnson went to exit the bus fifteen minutes later, he turned the volume back up. Ibid. The plaintiff asked Johnson to turn the volume down, but Johnson ignored him. Ibid. While waiting to get off the bus, Johnson stepped on the foot of a fellow passenger, Smith, who asked Johnson to apologize. Ibid. Johnson did not, and the two exchanged words. Ibid. Smith punched Johnson as he descended the stairs, and the two reentered the bus. Ibid. Smith chased Johnson to the rear of the bus, where Johnson pulled out a concealed handgun and fired multiple times. Ibid. One of the bullets hit the plaintiff. Ibid.

The court in Sanchez could not find proximate cause because "[t]he record [did] not indicate that [the] defendants had any reason to know or foresee that Johnson would harm any of the passengers. There [was] simply nothing within reason [the] defendants could have done to prevent the shooting under [such] circumstances." Id. at 85.

Here, the record clearly shows that Coats witnessed the teenagers harass plaintiff for seven or eight minutes. The teenagers not only verbally harassed plaintiff, they threw multiple objects at her, and one teenager flashed a weapon at her. Thus, unlike Sanchez, where the violence occurred rapidly and without warning, there was a prolonged hostile interaction between plaintiff and the teenagers, increasing the foreseeability of plaintiff's injury.

Further, in <u>Sanchez</u>, the court stated there was nothing the driver could have done to prevent the altercation. <u>Ibid.</u> Here, the driver acknowledged steps he could have taken to handle unruly or dangerous passengers, including pulling the bus over, yelling at the teenagers to stop, calling the NJT Hotline, and even calling the police. The record provides support for the finding that Coats' failure to take any of these actions was a proximate cause of plaintiff's injury. Therefore, we find no cause to disturb the jury's proximate cause determination.

## D. TCA Immunities

Defendants also assert immunities under N.J.S.A. 59:5-4, 59:3-5, and 59:3-3. Prior to trial, defendants did not move to dismiss the action based on public entity or public employee immunity; however, defendants did raise general TCA immunities in their answer. Defendants did not raise N.J.S.A. 59:3-5 until their post-trial motions. Nonetheless, it is a high bar for TCA immunities to be waived. <u>See</u> <u>Henebema v. Raddi</u>, 452 N.J. Super. 438, 443 (App. Div. 2017) (finding defenses waived only after defendant failed to assert immunity until after "three years of extensive pre-trial litigation, a lengthy and expensive trial, an appeal to us, and an appeal to the Supreme Court"); <u>Royster v. New Jersey State Police</u>, 439 N.J. Super. 554 (App. Div. 2015) (likening sovereign immunity to subject matter jurisdiction, which cannot be waived).

We need not address whether defendants timely asserted their TCA immunity defenses since we conclude none apply.

A public entity or public employee is not liable for failure to provide police protection or failure to provide sufficient police protection. N.J.S.A. 59:5-4. This section provides immunity for discretionary decisions concerning allocation of resources, but does not provide immunity for the performance of ministerial duties. See Wilson v. City of Jersey City, 415 N.J. Super. 138, 155 (App. Div. 2010), rev'd on other grounds, 209 N.J. 558 (2012). We have interpreted this immunity broadly to insulate the public entity's decision "whether to provide police protection service and, if provided, to what extent." Rodriguez v. N.J. Sports & Exposition Authority, 193 N.J. Super. 39, 43 (App. Div. 1983). This is because the immunity aims to protect "the government's essential right and power to allocate its resources in accordance with its conception of how the public interest will be best served, an exercise of political power which should be insulated from interference by judge or jury in a tort action." Suarez v. Dosky, 171 N.J. Super. 1, 9 (App. Div. 1979).

Conversely, the immunity does not apply to ministerial duties. See Wilson, 415 N.J. Super. at 155. Cases of failure to warn or protect, such as this one, have been considered ministerial, exposing public entities to liability. This is particularly so where an employee at the scene of a dangerous situation

13                                                      A-3737-17T2

has means reasonably available to warn or protect a victim, yet fails to do so. See Rocco v. NJ Transit Rail Operations, 330 N.J. Super. 320 (App. Div. 2000) (train conductor's failure to warn passengers of dangerous condition); Del Tufo v. Twp. of Old Bridge, 278 N.J. Super. 312 (App. Div. 1995), aff'd on other grounds, 147 N.J. 90 (1996) (officers' failure to summon medical help after an accident).

In his testimony, Coats acknowledged the numerous options available to him to address the situation, such as asking the teenagers to exit the bus, stopping the bus, calling the NJT Hotline, and calling the police. Instead, Coats failed to take any action. Thus, we conclude immunity under N.J.S.A. 59:5-4 does not apply.

Public entities and employees are also "not liable for an injury caused by [the] adoption of or failure to adopt any law or by [the] failure to enforce any law." N.J.S.A. 59:3-5. Based on the explicit language of the statute, defendants' argument must fail because the record is devoid of any evidence that Coats had a duty to "enforce" any "law." Although there were several actions Coats could have taken, these actions would not have been taken to enforce a law or regulation.

A public employee "is not liable if he acts in good faith in the execution or enforcement of any laws." N.J.S.A. 59:3-3. In Bombace v. Newark, 125

A-3737-17T2

N.J. 361, 367-72 (1991), the Court stressed the use of the word "acts," emphasizing that this section applies only where something has been done by an employee executing or enforcing the law.  See also Lee v. Brown, 232 N.J. 114, 127-29 (2018) (declining to apply N.J.S.A. 59:3-3 immunity because the failure to secure emergency power shut-off after an inspection found faulty wiring was not an affirmative act to enforce a law); Perona v. Twp. of Mullica, 270 N.J. Super. 19, 30 n.5 (App. Div. 1994) (declining to apply N.J.S.A. 59:3-3 immunity because the police's failure to confine plaintiff under civil confinement statute was not an act to enforce a law).

Here, plaintiff successfully argues that defendants' inaction resulted in the harm, rather than a specific action that defendants undertook.  Thus, this immunity does not apply.

Further, a public employee cannot invoke the good faith immunity of N.J.S.A. 59:3-3 without identifying the actual law allegedly enforced.  See Leang v. Jersey City Bd. of Educ., 399 N.J. Super. 329, 365 (App. Div. 2008), aff'd in part and rev'd in part, 198 N.J. 557 (2009).  Defendants' attorney conceded to the trial court that he could not point to any law that Coats was enforcing.

E.  Assessment of Bottle Thrower's Culpability

Lastly, defendants argue the trial court misinterpreted applicable statutes when it denied defendants' request to include the bottle thrower on the verdict sheet.  On this point, we agree.

The trial court's interpretation of a statute is subject to de novo review.  State v. Nance, 228 N.J. 378, 393 (2017).  With respect to the proper interpretation of a statute, our Supreme Court has held:

> A court's responsibility "is to give effect to the intent of the Legislature."  To do so, we start with the plain language of the statute.  If it clearly reveals the Legislature's intent, the inquiry is over.  If a law is ambiguous, we may consider extrinsic sources including legislative history.  We also look to extrinsic aids if a literal reading of the law would lead to absurd results.
>
> [State v. Harper, 229 N.J. 228, 237 (2017) (citations omitted).]

"The Comparative Negligence Act [(CNA)] and the Joint Tortfeasors Contribution Law [(JTCL), N.J.S.A. 2A:53A-1 to -5] comprise the statutory framework for the allocation of fault when multiple parties are alleged to have contributed to the plaintiff's harm."  Town of Kearny v. Brandt, 214 N.J. 76, 96 (2013).  "[J]oint tortfeasors" are "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them."  N.J.S.A. 2A:53A-

1.  "The [JTCL] was enacted to promote the fair sharing of the burden of judgment by joint tortfeasors and to prevent a plaintiff from arbitrarily selecting his or her victim."  Holloway v. State, 125 N.J. 386, 400-01 (1991).

The CNA determines the allocation of fault among joint tortfeasors.  The CNA provides that, when multiple defendants are liable, the jury shall determine "[t]he extent, in the form of a percentage, of each party's negligence or fault.  The percentage of negligence or fault of each party shall be based on 100% and the total of all percentages of negligence or fault of all of the parties to a suit shall be 100%."  N.J.S.A. 2A:15-5.2(a)(2).

However, where a public entity or public employee is determined to be a tortfeasor along with one or more other tortfeasors, "the public entity or public employee shall be liable for no more than that percentage share of the damages which is equal to the percentage of the negligence attributable to that public entity or public employee . . . ."  N.J.S.A. 59:9-3.1.

We acknowledge plaintiff's argument that the nonparty involvement – the bottle thrower's tortious conduct – does not involve the same tort as NJ Transit and its bus driver.  In fact, the latter's tort was the failure to take steps to prevent the bottle thrower's tort.  While NJ Transit and its bus driver are not "joint" tortfeasors with the bottle thrower, N.J.S.A. 59:9-3.1 does not require that the other actor be a "joint" tortfeasor of the public entity or public

employee. Instead, it limits the public entity or public employee's share of liability when either are determined to be a tortfeasor "in any cause of action along with one or more other tortfeasors." Id. (emphasis added).

It is also well-settled that these principles are not limited to negligence actions. For instance, in Suter v. San Angelo Foundry & Machine Co., 81 N.J. 150 (1979), the Court rejected the argument that the JTCL and CNA were limited to negligence actions, reasoning that such a limitation would frustrate "the legislative intent to mitigate the unfairness associated with the total bar to recovery posed by common-law contributory negligence." Blazovic v. Andrich, 124 N.J. 90, 98 (1991). Consequently, the Court determined the CNA applies to intentional torts as well as negligence. Id. at 112.

In Jones v. Morey's Pier, Inc., 230 N.J. 142, 159 (2017) our Supreme Court acknowledged that "[a] trial court's application of the [CNA] and [JTCL] is complicated when . . . a party alleged to be a joint tortfeasor is not a defendant at the time of trial." Nevertheless, decisions of

> this Court and the Appellate Division have permitted a factfinder to allocate fault to an individual or entity, notwithstanding the fact that at the time of trial that individual or entity is not liable to pay damages to the plaintiff, and the allocation may reduce the amount of damages awarded to the plaintiff.
>
> [Id. at 161.]

18                                                                A-3737-17T2

Plaintiff argues that because the bottle thrower was never added as a party to the suit, by either plaintiff or defendants, that the jury cannot allocate fault to him. Nonetheless, the CNA requires the "jury to make a good-faith allocation of the percentages of negligence among joint tortfeasors based on the evidence [–] not based on the collectability or non-collectability" of the tortfeasors' respective shares of the damages. Brodsky v. Grinnell Haulers, Inc., 181 N.J. 102, 121 (2004); see also Brandt, 214 N.J. at 103 ("[A]pportionment of fault under the [CNA] and the [JTCL] does not turn on whether the plaintiff is in a position to recover damages from the defendant at issue."). See Morey's Pier, 230 N.J. at 165 (allowing allocation of fault to a dismissed defendant); see also Cartel Capital Corp. v. Fireco of N.J., 81 N.J. 548, 569 (1980) (allocating fault to settling defendants); Burt v. W. Jersey Health Sys., 339 N.J. Super. 296, 305 (App. Div. 2001) (allocating fault to a doctor dismissed from malpractice litigation due to plaintiff's failure to file an affidavit of merit).

Our courts have also apportioned fault to known but unidentified tortfeasors. Riccio v. Prudential Prop. & Cas. Ins. Co., 108 N.J. 493, 496-97 (1987). Cockerline v. Menendez also allowed allocation of fault to "John Does" after a multi-vehicle accident. 411 N.J. Super. 596, 610, 619 (App. Div. 2010) (quoting Riccio, 108 N.J. at 504). From these cases, it becomes clear

that persons known to be at least partly liable should be allocated their share of the fault, even when, in circumstances like these, they remain unidentified. Krzykalski v. Tindall, 232 N.J. 525, 543 (2018).

Plaintiff argues NJ Transit failed to properly raise its defense of third-party liability. To allocate fault to a second tortfeasor, "fair and timely notice" is required. See Young v. Latta, 123 N.J. 584, 597 (1991); see also Higgins v. Owens-Corning Fiberglas Corp., 282 N.J. Super. 600, 609, 615 (App. Div. 1995). In this case, defendants raised third-party conduct as a cause of plaintiff's injuries as a separate defense in its answer.[1] In Krzykalski, raising this argument in the pleadings provided sufficient notice. 232 N.J. at 529.

Plaintiff also argues that because NJ Transit was responsible for security, it should not be able to allocate a portion of liability to a third party. As explained in Blazovic, a defendant responsible for security should be precluded from relying on contributory negligence "to offset its own responsibility only in circumstances where that defendant's duty encompassed the obligation to prevent the plaintiff's allegedly inappropriate conduct."

---

[1] On this point, plaintiff's own amended complaint acknowledged third-party conduct as a cause of her injuries, when she alleged that another passenger "caused significant and permanent injuries . . . by throwing a glass object at her face."

A-3737-17T2

Martin v. Prime Hosp. Corp., 345 N.J. Super. 278, 287 (App. Div. 2001) (citing Blazovic, 124 N.J. at 111).

In determining whether Blazovic excuses apportionment, we focus "on whether plaintiff's injury was so foreseeable to the supervising defendant that a failure to act or an inadequate response that causes the plaintiff to suffer the foreseeable injury warrants imposition of the entire fault upon that defendant." Id. at 292-93 (citing Blazovic, 124 N.J. at 112).

The determination of foreseeability is a factual inquiry left to a jury. See generally ibid. Therefore, we vacate and remand for a jury to make this determination, and if necessary, apportion fault.

On remand, we find no need to order a new trial on damages, which defendants do not contest. "When the damages award is not tainted by the error in the liability portion of the case and is fairly separable, retrial need not include the issue of damages." Ogborne v. Mercer Cemetery Corp., 197 N.J. 448, 462-63 (2009) (citing Lewis v. Am. Cyanamid, 155 N.J. 544, 563 (1998) (noting that remand on liability and comparative negligence "should not include the issue of damages")); see also Martin, 345 N.J. Super. at 293 (stating that failure to apportion responsibility did not affect the damages award); Weiss v. Goldfarb, 295 N.J. Super. 212, 228 (App. Div. 1996) (noting

21

that since damages and liability issues are "fairly separable," there is no reason to retry damages), rev'd on other grounds, 154 N.J. 468 (1998).

Thus, we discern no reason to disturb the damages award. Nor should the trial judge inform the jury of the amount of the award. Instead, the judge should simply inform the jury that another panel determined NJ Transit was at fault and that NJ Transit's fault was a proximate cause of plaintiff's damages. Therefore, on remand, the judge will instruct the jurors that they will only need to address the issue of allocation of fault between the bottle thrower and defendants.

To the extent we have not addressed any argument raised by defendants, we deem such arguments to lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, vacated and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

22                                                                    A-3737-17T2